heim, upon which he rested his case as against that defendant, had been made out. We cannot upon this appeal grope through the case, and adapt the evidence to whatever obligation on Friedheim's part it may possibly support. In other words, we cannot conform the complaint to one of several views of the evidence, for the purpose of reversing a judgment which, secundum allegata et probata, was entirely correct.

The judgment should be affirmed, with costs. All concur.

---

(23 App. Div. 518.)

### In re OPENING OF MT. VERNON AVE.

(Supreme Court, Appellate Division, First Department. December 17, 1897.)

CEMETERIES—STREETS—STATUTORY EXEMPTION.

> The rural cemetery act (Laws 1847, c. 133, § 10), at the time of the organization of the cemetery association involved, provided that no street, road, avenue, or thoroughfare should be laid through such cemetery, or any part of the lands held by such association for the purposes of a cemetery, without the consent of the trustees of such association, except by special permission of the legislature; and Laws 1896, c. 712, § 2, provides that no restriction or limitation shall affect any proceeding for the laying out or establishment of any street, but such proceeding shall have the same effect, when taken, as though such restriction or limitation had been repealed. *Held*, that such law of 1896 is not effectual to take away the right given by such section of the rural cemetery act, as it does not purport to affect the right to lay out or open streets, nor contain anything with reference to such right.
>
> O'Brien, J., dissenting.

Appeal from special term.

Application by the mayor, aldermen, and commonalty of the city of New York to acquire title for the purpose of opening Mt. Vernon avenue, from Jerome avenue to the northern boundary of the city. From an order appointing commissioners of estimate and assessment, the Woodlawn Cemetery appeals. Reversed.

The following is the opinion of the court below (PRYOR, J.):

Whether Woodlawn Cemetery, because no longer a rural cemetery, and because owning three hundred and fifty acres, may claim the protection of the act of 1847, need not be decided. In language not to be mistaken, the legislature ratified and confirmed the act of the commissioner of street improvements in laying out this avenue. Acts 1896, c. 712, § 1. Here, then, is the "special permission" required by the act of 1847. But in this case no permission was necessary; for by section 2, c. 712, Laws 1896, is expressly provided that "no limitation or restriction contained in any general or special law relating to the laying out or establishment of any street, avenue, * * * shall affect any special proceeding heretofore or hereafter commenced to acquire title to any such street, avenue," etc., "and any such proceeding shall be commenced and completed the same as if such limitation or restriction existed, and as if such limitation or restriction had been repealed," etc. It is answered, however, that the rural cemetery law is a special, private, and local statute, while the act of 1896 is a general statute, and that hence the former is not repealed by the latter. In re Commissioners of Central Park, 50 N. Y. 498. The exact contrary is the fact; the act of 1847 (amended 1877) being general, the act of 1896 being special and local. Moreover, section 2 of the act of 1896 does not import a repeal of the former statute, but forbids its application to the laying out and opening of this avenue. It is insisted, again, that the act of 1896 is unconstitutional, because, being private and local, it embraces more than one subject,

and the repeal of section 10 of the act of 1847 is not expressed in its title. Here, I repeat, is no repeal, but a provision that the section shall not apply to the present case. But, be there a repeal, still the enactment is valid. The title is "An act in relation to the final map, plans and profiles of the Twenty-Third and Twenty-Fourth wards of the city of New York." Upon perusal of the statute it is obvious that its subject is single, as indicated by the title. Removal of an obstacle to the attainment of the policy of the enactment is certainly not an independent and incongruous provision, nor beside the purpose declared in the title. "It expresses a general object, and it must now be considered as the settled rule of construction that, where such is the case, all matters fairly and reasonably connected with it, and all measures which will or may facilitate its accomplishment, are proper to be incorporated in the act, and are germain to its title." In re Knaust, 101 N. Y. 188, 194, 4 N. E. 338. Ample and unimpeachable authority for opening the avenue is apparent.

Application granted.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Charles A. Miller, for appellant.
Henry De F. Baldwin, for respondent.

RUMSEY, J. Mt. Vernon avenue was laid out as a street of the first class in the city of New York in 1876, and the maps and profiles were filed in the proper office in due time. As laid out upon the maps, it passed through a portion of the lands owned for cemetery purposes by the Woodlawn Cemetery, an association organized under chapter 133 of the Laws of 1847, generally known as the "Rural Cemetery Act." Although the street was laid out so many years ago, no steps were taken to open it until the year 1897, when the usual formal notice was given that an application would be made to the court for the appointment of commissioners of estimate and assessment. The Woodlawn Cemetery appeared and opposed the application so far as its land was concerned, upon the ground that, by the provisions of the law under which it was organized, no street could be laid through any part of the lands owned by it without its consent or the special permission of the legislature. It was claimed by the city that such permission had been granted, and it was so held by the court at special term. Whether the court was correct in so holding is the single question presented upon this appeal.

Since the organization of the association, permission has been given to it by the legislature to hold a much larger quantity of land than that authorized by the act under which it was incorporated; but in all other respects there has been no change in its rights as they were established by that statute, unless some of these rights have been taken away by the laws hereafter to be referred to. That it was organized as a rural cemetery, and still remains one, is not to be disputed; and, in fact, it does not seem to be seriously contested, although some suggestion to the contrary is made in the briefs of counsel. As such an association, it is undoubtedly entitled to the benefit of section 10 of the law under which it was organized, which at the time of the organization of this cemetery provided that the proprietors of lots or plots in such cemeteries should hold those lots exempt from taxation so long as they should be devoted to the purpose of a cemetery, and that during that time no street, road, avenue, or thorough

fare should be laid through such cemetery, or any part of the lands held by such association for the purposes aforesaid, without the consent of the trustees of such association, except by special permission of the legislature of the state. As originally passed, the section forbade the laying of any street through the lands of the association, but in an amendment made in 1877 the word "laying" was changed to the phrase "laying out." It is suggested by counsel that this change of verbiage makes a great change in the effect of the statute, because, when it forbade laying a road through the cemetery lands, that necessarily involved a prohibition, not only of the making of a map locating a road or street through the cemetery, but also of the opening and maintaining such a street, whereas, when the legislature forbade only the laying out of a street, it meant simply that no map should be made locating a street through those lands, but it did not intend that a street already located should not be opened and maintained. It is hardly necessary to discuss this proposition. To accede to the contention of the learned counsel for the appellant would be simply to say that, while the legislature did not permit a map to be filed locating a road through these lands, yet, if a road could be opened without a map, that was not to be forbidden. Such a contention defeats itself, and it is not necessary to discuss it further.

But, aside from all these collateral questions, the true matter in issue is whether permission has been granted by the legislature to lay out this road. It is suggested that such permission was granted by chapter 245 of the Laws of 1874 and chapter 545 of the Laws of 1890; but a consideration of those sections satisfies us that they will not bear the construction contended for by the counsel for the respondent. If such permission was granted at all, it was done only by section 2 of chapter 712 of the Laws of 1896; and the question is whether that section, upon a fair construction, can be held to grant the special permission required by section 10 of the rural cemetery act, before a street can be laid out through the grounds of a cemetery organized under that act.

It will be noticed that the legislature have expressly limited the manner of taking away the exemption which by that section has been granted to a rural cemetery. The reason for this limitation is not difficult to find. These cemeteries were established as places for the burial of the dead. It was the intention that from time to time, and as rapidly as possible, lots should be laid out all over the cemeteries in which the lot owners might bury their dead. It would be impossible to dispose of the lots unless those buying them were practically guarantied that the bodies buried in them should remain undisturbed. Nothing is more hateful than the desecration of a grave, and it was not only necessary for the sale of the lots that this exemption should be given, but it was done also in deference to what is recognized as a universal sentiment, that the places which are consecrated to the burial of the dead shall perpetually remain unviolated and undisturbed. In deference to this feeling, the legislature practically promised by section 10 of the act that these cemetery grounds should be put to no other use except by special permission of the legislature, which it was fair to infer, in view of the circumstances, would only

be granted for peculiar reasons, and under some special exigencies. When the legislature said that the exemption should only be taken away by special permission, they must be deemed to have meant precisely what was said, and therefore no general expressions which do not necessarily cover the particular case will be deemed to be sufficient. In view of these considerations, an examination of section 2 of chapter 712 of the Laws of 1896 will show, we think, that it is not broad enough to take away the exemption given by section 10 of the rural cemetery act. The provisions of section 10, as above quoted, show that the privilege that no street shall be laid out through the cemetery is not a restriction or a limitation upon the right to lay out a street, but it is a privilege given to the lot owners for a special purpose, and to subserve a particular end. There is no general right to lay out streets through any private property, and, unless given by statute, no such right exists.

Section 2 of the act in question does not purport to affect the right to lay out or open streets. It contains nothing with reference to that right. It simply acts upon proceedings which have been or shall be commenced for that purpose, and it provides that no restriction or limitation shall affect those proceedings; but it does not provide that an exemption theretofore existing shall be taken away, so as to extend the operation of those proceedings. If there were any limitations or restrictions in the proceeding to acquire title, by which they were hampered, this section operates to take away those limitations; but it does not purport, nor is it broad enough, to take away any exemption which was granted before the commencement of the proceedings, and with regard to which the proceedings themselves can have no effect. It does not say that any exemption granted is repealed, but it says that the proceeding shall have the same effect when it is taken as though any restriction or limitation to it had been repealed. But, as we said, the provisions of section 10 of the rural cemetery act contains no restriction or limitation to any proceeding. The exemption given by that act takes effect before the proceeding can be commenced, and it gives to the lot owner an absolute guaranty against the taking of the first step necessary to the existence of the right to begin such proceeding. No matter what proceeding has been taken, it cannot be effective to give the right to lay a road through this cemetery, because the law says the cemetery is not within the jurisdiction of the persons who undertake to lay out the road. The difference is precisely the difference between jurisdiction and procedure. The provisions of section 2 of the statute of 1896 may be effectual to enlarge the procedure, and to take away any restrictions or limitations in regard to that; but they are not effectual to enlarge the right to take property which originally was not within the power of the court exercising the procedure. To do that, the legislature says that its special permission is necessary, and that means, as we think, that the law which takes away the exemption must be so broad and so plain that it can be seen that it is aimed at the exemption, and not at something collateral to it, which exists without regard to it, and which can proceed although the exemption is still in full force. For these reasons, we are of the

opinion that the law of 1896 is not effectual to take away the right given by section 10 of the rural cemetery act, and that the judge erred in appointing commissioners of estimate and assessment, so far as this land was concerned. It is not necessary, in this view of the case, to examine into the constitutionality of the law of 1896.

The order appealed from must be reversed so far as it affects the lands of the association, with $10 costs and disbursements.

VAN BRUNT, P. J., and PATTERSON, J., concur.

O'BRIEN, J.    I dissent, for the reasons given by the learned judge at special term.