cover. It would be useless, therefore, to send the case back for a new trial.

The judgment appealed from must therefore be reversed, and the complaint dismissed, with costs to the appellant in this court and the court below. All concur.

---

## In re MT. VERNON AVE. IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. EMINENT DOMAIN—ACTS CONSTITUTING APPROPRIATION OF PROPERTY.

A resolution of the board of street opening and improvement providing for the vesting of title to the land required for a proposed avenue at a date thereafter to be determined, followed by a resolution which directed that title should vest on a designated date, did not so expropriate the land to the public use and fix the rights of the parties that thereafter the board of street opening and improvement was without power to rescind the resolution directing that title should vest on a designated date.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 161–164.]

2. SAME—RIGHT TO DISCONTINUE PROCEEDINGS.

Under Revised Greater New York Charter, Laws 1901, p. 426, c. 466, § 1000, providing that the board of estimate and apportionment shall have power to discontinue proceedings for opening streets or parts thereof, a proceeding to open a street may be discontinued as to a part of such street and the land proposed to be taken therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 527.]

Appeal from Special Term.

In the matter of the application of the mayor, aldermen, and commonalty of the city of New York relative to acquiring title for the purpose of opening Mt. Vernon avenue, although not yet named by proper authority, from Jerome avenue to the northern boundary of the city. From an order confirming the report of the commissioners of estimate and assessment as to damages (52 Misc. Rep. 319, 102 N. Y. Supp. 159), Samuel H. Valentine appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Barclay R. V. McCarty (Jared C. Baldwin, Jr., and William H. Snowden, on the brief), for appellant.

John P. Dunn (James R. Fitzgerald and Francis K. Pendleton, Corp. Counsel, on the brief), for respondent.

CLARKE, J. This is an appeal by Samuel H. Valentine from an order of the Special Term confirming the report of commissioners of estimate and assessment as to awards for damages in a street opening proceeding, upon the ground that no award was made to him. The board of street opening and improvement of the former city of New York on the 15th day of May, 1896, adopted a resolution requesting the counsel to the corporation to take the necessary proceedings to acquire title for the purposes of a public street to the lands required for the purposes of opening Mt. Vernon avenue,

from Jerome avenue to the northern boundary of the city of New York, and directing that the entire costs and expenses be assessed upon the property deemed to be benefited. This resolution provided that upon a date to be hereinafter more fully specified, and not less than six months after the filing of the oaths of the commissioners of estimate and assessment, the title to any land so required should vest in the city. The proceedings contemplated at that time included property lying between Jerome avenue and 233d street, and the proposed street ran through lands of the Woodlawn Cemetery.

On the line of the proposed street, as laid out, an irregular strip from the land of Valentine was to be taken, which had a diagonal base 114.21 feet in length, extending across the whole roadway at its southern extremity, and at the northern was diminished to 23.33 feet. This gore appears to have been 698.84 feet long. The commissioners were appointed June 25, 1897, and took their oaths on August 27, 1897. On September 10, 1897, a resolution was adopted by the board of street opening and improvement, directing that title should vest in the city on March 7, 1898. On the motion for the appointment of commissioners, objection was made on behalf of the Woodlawn Cemetery Association upon the ground that without the consent of the cemetery authorities or special permission of the Legislature the city did not have the right to acquire title for street purposes to that part of Woodlawn Cemetery lying between Jerome avenue and 233d street. This objection was sustained by this court, on appeal from the order appointing commissioners, in 23 App. Div. 518, 49 N. Y. Supp. 531, and the order appealed from was reversed, so far as it affected the lands of the association. This decision was made at the December, 1897, term, and on December 31, 1897, before the taking effect of the Greater New York charter, and upwards of two months in advance of the date set by the resolution of September 10, 1897, for the vesting of title, the resolution providing therefor was rescinded by the board of street opening and improvement. The city appealed from the order of this court to the Court of Appeals, where the appeal was dismissed on January 7, 1901.

The powers and duties which had been vested in the board of street opening and improvement were by the Greater New York charter (chapter 378, p. 1, of the Laws of 1897) devolved upon the board of public improvement. By the revised charter (chapter 466, p. 108, of the Laws of 1901) the board of public improvement was abolished, and by section 243 thereof it was provided that the board of estimate and apportionment should exercise such power and perform such duties as were theretofore vested in the board of street opening and improvement. On October 6, 1902, the board of estimate and apportionment, acting under the provisions of section 1000 of the revised charter, under which it was authorized and empowered to discontinue any and all legal proceedings taken for opening, widening, straightening, extending, altering, or closing streets or parks, or parts thereof, at any time before title to the lands and premises to be thereby acquired shall have vested in the city of New York, if in its opinion the public interest required such discontinuance, passed a resolution

directing the corporation counsel to discontinue the proceeding at bar "so far as the same affects that portion of Mt. Vernon avenue lying between 233d street and Jerome avenue."

The commissioners have proceeded, and in accordance with the decision of this court, which eliminated the cemetery lands from the proceeding, and the resolution of the board of estimate discontinuing the proceeding in regard to all lands south of 233d street, have taken into consideration only the lands north of that street, and so have made no award to the appellant. He claims that the board of estimate and apportionment had no power to discontinue the proceeding in part. He further claims that the original resolution of the board of street opening and improvement of May 15, 1896, providing for the vesting of title to all the land required for the proposed Mt. Vernon avenue for its entire distance from Jerome avenue to the northern boundary of the city of New York, including the appellant's land, at a fixed date thereafter to be determined, followed by the resolution of September 10, 1897, which directed the title to vest on March 7, 1898, so expropriated the land to the public use and fixed the rights of the parties that thereafter the board of street opening and improvement was without power to rescind said resolution providing for the vesting of title, and the city was without power to discontinue the proceedings.

If his contention be sound, the result would be that in a proceeding, based upon the doctrine of eminent domain, by which the city is authorized to acquire private property for public use for a public street, the city would be required to pay for an irregular, elongated trapezium tapering at one end to 23.33 feet in depth, surrounded upon two sides by the cemetery property, forming a cul de sac utterly useless in the development of the street system of the borough of the Bronx, and requiring a large payment to be made therefor, not for the benefit of the public, but solely as a gift to the present owner. Such a result would raise a serious constitutional question. The lands taken in this proceeding are to be paid for by assessment upon property. The taking of private property in condemnation proceedings can only be for a public use, and the payment for such property by assessment can only be authorized when so taken for a public use. Therefore, to compel assessment for this property, which the city does not want and cannot use for a public street, would seem unauthorized, and open to successful attack as illegal, null, and void.

The board of street opening and improvement, one of the administrative boards of the city, had the same power to rescind the resolution fixing the date for the vesting of title that it had to pass the original resolution providing for the vesting. Inasmuch as said action was taken before the date fixed, and in view of the proceedings taken by the Woodlawn Cemetery Association in objecting to the appointment of commissioners and the action of the court sustaining said objections, it was the duty of the board so to act because it was apparent that, if the lands of the cemetery could not be taken for the proposed street, that portion of it below 233d street became a physical and legal impossibility. No rights had accrued. No one had

been affected. The city had no right of entry, and the title was absolutely in the hands of the owner of said property. If the power to discontinue the whole proceeding then existed, it is difficult to perceive how the exercise of the incidental power of fixing a date for vesting of title might not be rescinded. The land was no more expropriated by the resolution of the board than by any other of the preliminary steps in the proceedings. From the time of the passage of the original street opening act of 1813 these preliminary steps have been held ineffectual for that purpose down to the final confirmation of the report of the commissioners. Up to that time the city had the power to discontinue the proceedings. In the Matter of the Commissioners of Washington Park, 56 N. Y. 144, Judge Rapallo, writing for a unanimous court and reviewing many cases, said:

"A long series of decisions has established that in these street cases the corporation may be permitted to discontinue proceedings at any time before rights resulting therefrom have become vested in the property owners. They further hold, differing in this respect from the English cases, that no such rights are vested until the report of the commissioner is finally confirmed and there is a final award, in the nature of a judgment, in favor of the property owners for their compensation."

In the Matter of the Military Parade Ground, 60 N. Y. 319, Judge Miller said, speaking for a unanimous court:

"Under the provisions of the act of 1813 (2 Rev. Laws 1813, p. 409, c. 86, § 178), which are still in force, in reference to application for the appointment of commissioners and the estimate of damages in opening or laying out any street or public square, the title to the land does not pass to the city until the confirmation of the report of the commissioners of estimate and assessment. Unless this is done, the title remains in the owner, with full power to exercise entire control over it, and only subject to the right of the city to acquire title according to law."

And alluding to the Matter of Commissioners of Washington Park, supra, he said:

"The court held that a public body or public officers, to whom the right of eminent domain has been delegated by the Legislature for public purposes exclusively, may be permitted to discontinue proceedings instituted by them before the title is acquired and the rights resulting therefrom have become vested in the property holder."

The early cases held that the court had authority to allow discontinuance, even when no provision therefor was made in the street opening act. Subsequently, when power was granted, by section 7, c. 209, p. 185, of the Laws of 1839, at any time previous to the confirmation of the report by the court to the city authorities to discontinue all proceedings relative to the improvement without the necessity of an application to the court for leave to do so, that power has been consistently upheld.

Section 1000 of the revised charter, heretofore cited, authorized and empowered the board of estimate to—

"discontinue any and all legal proceedings taken for opening streets * * * or parts thereof, at any time before title to the lands and premises to be thereby acquired shall have vested in the city of New York."

By the rescinding resolution no time was fixed for the vesting of title in the city, and therefore such title vested, under the general

provisions of law, upon the confirmation by the court of the report of the commissioners. Section 990, Revised Charter. The board of estimate and apportionment having directed the discontinuance long before the making of any preliminary report, and so, of course, before the final confirmation of the report of the commissioners, possessed due authority so to act. If it had discontinued the entire proceeding, I apprehend no question could be raised. The statute expressly provides for the discontinuance of all legal proceedings taken for opening streets or parts thereof; and, independent of the statute, the power to discontinue the whole must include that of a part.

The situation presented upon this record illustrates how important it is that there should be lodged in the city authorities, who have to deal with the street system of the great city, power to meet emergencies as they arise. The appellant's property remains to him precisely as it was before the commencement of these proceedings. Nothing has been taken from him. No right to receive what, in effect, would be a gift from the city treasury, has become vested in him.

The order appealed from should be affirmed, with costs. All concur.