SOCIETY OF THE NEW YORK HOSPITAL, Appellant, *v.* JOHN W. JOHNSON, as Superintendent of Public Works of the State of New York, Respondent.

Second Department, April 28, 1958.

*Thomas E. Dewey* for appellant.

*Louis J. Lefkowitz, Attorney-General (John R. Davison* and *Peter E. Herzog* of counsel), for respondent.

Murphy, J. Appellant is a charitable corporation which operates a mental hospital within the city of White Plains. Chapter 659 of the Laws of 1927 (an act in relation to certain streets in the city of White Plains [hereinafter referred to as the 1927 statute]), provides in part that:

'' Section 1. No street or avenue or road shall hereafter be laid out or opened through or upon any of the [appellant's] lands and premises in the city of White Plains  *  *  *  and none of said land shall be taken for any use whenever and so long as the same shall be owned or occupied for hospital purposes by The Society of The New York Hospital, provided, however, that the said The Society of The New York Hospital shall dedicate, without claim or award for damages, for street purposes, the following parcels of land, and shall, in addition thereto, provide one hundred and fifty thousand dollars for the paving and regulating of the street described in said parcels ''.

Pursuant to this statute and on December 30, 1927, appellant conveyed 33 acres of land and paid $150,000 for street purposes. On January 31, 1957 respondent purported to appropriate on behalf of the State an additional part of the hospital property for highway use. On April 29, 1957, after respondent had entered upon the property and started work there, appellant, invoking the 1927 statute, commenced an action for a permanent injunction and for a judgment declaring that its property is not subject to condemnation. The order appealed from, *inter alia,* denied appellant's motion for an injunction *pendente lite* and directed the entry of a judgment declaring the 1927 statute invalid insofar as it prohibits respondent from appropriating appellant's land. The learned Special Term held that the 1927 statute was without binding effect and had been repealed by implication.

Although the State cannot be deprived of its sovereign power of eminent domain, the 1927 statute is effective unless and until repealed. Instances of similar statutes are set forth in *Matter of Board of Street Opening of the City of N. Y.* (133 N. Y. 329, 333, 334). The State "cannot permanently part with it [the power of eminent domain] as to any property under its jurisdiction, but may resume it at will". (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 238, affd. 176 U. S. 335.) "The legislature having full power to grant or withhold the exercise of the right of eminent domain, it is competent for it to provide that streets shall not be laid through cemeteries or railroad grounds, but it is also competent to reverse this policy at any time." (1 Lewis on Eminent Domain [3d ed.], p. 737.)

It is undisputed that here there has been no express repeal of the 1927 statute. There should be convincing language before an intent to repeal is to be deemed implied in subsequent legislation (*Cimo* v. *State of New York*, 306 N. Y. 143, 148). The issue before us is whether repeal by implication has been effected by the first sentence of subdivision 3 of section 340-b of the Highway Law, which section was added by chapter 651 of the Laws of 1956, effective April 15, 1956. This sentence and the pertinent part of the succeeding sentence, read: "*Notwithstanding any inconsistent provisions of this chapter or any other law, general or special, any and all property which the superintendent of public works* deems necessary for the construction, reconstruction and maintenance of interstate highways and bridges thereon shall be acquired pursuant to the provisions of any section or sections of this chapter applicable to the acquisition of land or rights and interests therein, and for the settlement of claims for damages resulting from the work of constructing, reconstructing and maintaining such interstate highways. The superintendent of public works, for the people of the state of New York, shall acquire *pursuant to the aforesaid procedures* any property or interest therein, necessary for any and all purposes connected with the construction". (Emphasis supplied.)

What provisions of the Highway Law and other laws did the Legislature consider inconsistent with the power of the Superintendent of Public Works to choose and acquire a site he deemed necessary pursuant to any provision of the Highway Law? The answer is evident. In section 340-a of the Highway Law specific "state interstate routes" are set forth, including a connection from one such route to another "through or northerly of White Plains". It is for the purpose of effecting this connection that respondent seeks appellant's land. Subdi-

vision 1 of section 340-b provides that such routes and connections shall be designated "interstate highways", a new type of highway in this State. Various procedures for condemnation of highways and roads are provided for in the Highway Law (§ 30 [State highways]; § 118 [County roads]; § 148 [Town roads]; § 170 *et seq.* [Town highways]). Reference in some instances is made to the Condemnation Law (L. 1920, ch. 923, as amd.). As to State highways, a separate procedure is set forth (Highway Law, § 30, subd. 2), with representatives of counties having a voice as to selection of land within their boundaries for access and relocated highways (Highway Law, § 30, subd. 1, pars. [a], [b]). City charters also contain procedures for condemnation of land for streets and highways (e.g., White Plains City Charter, §§ 131, 203, 207; L. 1915, ch. 356).

The provision in subdivision 3 of section 340-b of the Highway Law as to inconsistent laws is related, therefore, to procedures available to the superintendent, as also appears from the use of the phrase "the aforesaid procedures" in the second sentence, hereinbefore quoted. There is a similar general provision, for example, in section 11–10.0 of the Nassau County Administrative Code (L. 1939, ch. 272) as to condemnation procedure, namely, that it be operative "Notwithstanding any other general, special or local law".

Procedures have nothing to do with the efficacy of the 1927 statute. A similar situation was considered in *Matter of Mayor, Aldermen & Commonalty of City of N. Y.* (23 App. Div. 518), where the statute involved had provided that, except by special permission of the Legislature, no thoroughfare should be laid out through a certain cemetery. It was held that the exemption was not terminated by subsequent legislation that " no limitation or restriction contained in any general or special law relating to the laying out and establishment of any street [or] avenue * * * shall affect any special proceeding heretofore or hereafter commenced to acquire title to any such street ". So, too, in *Village of Hyde Park* v. *Oakwoods Cemetery Assn.* (119 Ill. 141, 148) it was stated: "The two acts may stand together. Under the general law, all roads and streets in the village are under its control, except the lands of the association, and as to those lands the association has exclusive control."

Nor is the power granted to the superintendent (to acquire any and all property he deems necessary) inconsistent with the exemption. It is the usual general power delegated by the Legislature, either expressly as in this case, or impliedly, to implement selection of a site (*Matter of Townsend*, 39 N. Y.

171, 174; *Matter of Fowler,* 53 N. Y. 60; *Matter of City of Rochester* v. *Holden,* 224 N. Y. 386, 391; *Matter of Hicks Development Corp.* v. *Village of Lawrence,* 282 App. Div. 1048, affd. 306 N. Y. 922).

The 1927 statute has not been repealed. Respondent is without power to appropriate appellant's land.

The order should be modified (1) by striking from the first paragraph thereof the words " denied in all respects " and by substituting therefor the words " granted " and (2) by striking from said order everything following the word " denied " in the second ordering paragraph. As so modified, the order insofar as appealed from should be affirmed, without costs, and the judgment should be vacated.

BELDOCK, Acting P. J. (concurring). I concur, but only for the reason hereinafter stated. Repeal by implication is not favored. (*Peterson* v. *Martino,* 210 N. Y. 412, 418.) Where two statutes are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the earlier by implication. (*People ex rel. Bronx Parkway Comm.* v. *Common Council & Bd. of Estimate of City of Yonkers,* 229 N. Y. 1.) This is especially so where the later statute is general, and the earlier is special. (*Cimo* v. *State of New York,* 306 N. Y. 143.) In my opinion, it may not be said that the Legislature determined by the later statute (Highway Law, § 340-a) that the right of eminent domain shall be exercised as to appellant's property. All this later statute does is to authorize respondent to appropriate property for a route " passing through or northerly of White Plains ". Since the route may be laid out outside the hospital property, the two statutes (L. 1927, ch. 659; Highway Law, § 340-a) may coexist without repugnancy by merely making the route pass northerly of White Plains.

HALLINAN, J. (dissenting). There should be an affirmance here for the reasons stated by the learned Justice at Special Term and for the following additional reasons:

The subsequent statutes (Highway Law, § 340-a, 340-b) confer upon the Superintendent of Public Works the plenary power to terminate the exemption created by the 1927 statute (L. 1927, ch. 659), and thereafter such exemption was expressly terminated when respondent duly exercised this power.

Prior to 1944 the State itself did not acquire the rights of way for its highways. Its policy was to vest in the counties such power and duty (Highway Law, § 30, [L. 1909, ch. 30]). Nor was it then the State's policy to build highways in cities. In

1944, however, the then Governor in his message to the Legislature recommended abandonment of this policy. He found that the State highway development was being rendered abortive by the unwillingness or inability of some counties to acquire the necessary rights of way. Respondent points out, and appellant does not question, that the Governor stated:

" Acquisition of Rights-of-Way  *  *  *

" the State's program of highway development was defeated by the unwillingness or inability of some counties to acquire the necessary rights-of-way.

" This question has been given careful study in recent months. I now recommend that the State be authorized to acquire and pay for necessary rights-of-way in order that the post-war program of highway construction may be carried out. In this connection I also recommend that the State should pay for the building of those parts of its arterial highways which are to pass through cities ". (Public Papers of Thomas E. Dewey, 1944, p. 16.)

The Legislature promptly adopted the Governor's recommendation and effected a fundamental change in the State's policy. In order to stimulate postwar employment and industrial recovery and in order to integrate all arterial highways into a State highway system (cf. Highway Law, § 349-b), the Legislature adopted chapters 543 and 544 of the Laws of 1944 and chapter 619 of the Laws of 1945. Chapter 543, which was amended by chapter 619, added article XII-B to the Highway Law (§§ 349-b to 349-f), relating to highways through cities. Chapter 544 repealed former sections 30 to 37 of the Highway Law, and added a new section 30 relating to highways outside cities.

In order to attain the stated objectives, the Superintendent of Public Works was empowered under the 1944–1945 statutes to lay out on behalf of the State all new highways through cities and counties, and to acquire or cause to be acquired all necessary property therefor (Highway Law, § 349-c, subds. 2.6, 3.3).

In order to achieve the further objective of integrating the State highways with the national interstate highway system and thus promote the national defense and make the State eligible to receive Federal aid, the Legislature in 1955 and 1956 enacted additional statutes (L. 1955, ch. 748 [amdg. Highway Law, § 340]; L. 1956, ch. 357 [adding Highway Law, § 340-a]; L. 1956, ch. 651 [adding Highway Law, § 340-b]; see 1956 Legis. Annual, pp. 186–187). These statutes follow

substantially the pattern of the 1944–1945 statutes. In said sections 340 and 340-a of the Highway Law the Legislature set forth and generally described certain State interstate routes. One of these is "Interstate Route Connection 520", which is generally described as running from "interstate route 502 in the vicinity of Elmsford, generally easterly passing through or northerly of White Plains to a connection with interstate route 501 in the vicinity of Rye." (Highway Law, § 340-a.)

In said section 340-b of the Highway Law with respect to all the interstate highways described in section 340-a, the Legislature empowered the Superintendent of Public Works: (a) to determine the design and type of construction "subject to the provisions of federal aid therefor" (subd. 1), (b) to combine, terminate or relocate intersecting highways (subd. 2), (c) to acquire "any and all property which" he "deems necessary for the construction, reconstruction and maintenance of interstate highways and bridges" (subds. 3, 5), and (d) to utilize the funds made available by the Federal Government under the Federal Aid Highway Act (U. S. Code, tit. 23) for the construction of the interstate highways designated in section 340-a of the Highway Law and for the "acquisition of rights of way necessary for such interstate highways" (subd. 4).

Exercising the statutory power thus vested in him by sections 340-a and 340-b of the Highway Law, respondent determined that it was necessary to acquire a small strip of appellant's land in the city of White Plains for the purpose of building one of the designated interstate highways. Appellant has not challenged the propriety or reasonableness of respondent's judgment as to such necessity. Its only contention is that the exemption of its land created by the 1927 statute now estops respondent from acquiring its land for such interstate highway, despite the powers granted to him by the later statutes (Highway Law, §§ 340-a, 340-b [L. 1956, chs. 357, 651]). In our opinion that contention is unsound and must be rejected.

The prime, pervading purpose of the 1956 statutes mentioned is: (a) to permit the State to build and integrate arterial highways within its borders and to connect such highways with those which are part of the national interstate highway system, (b) to have the State do so through the medium of its Superintendent of Public Works without regard to the boundaries of cities and counties, (c) to stimulate the public economy and to promote the national defense, and last, but not least, (d) to obtain the substantial financial aid given by the Federal Government provided the State highways are built in accordance

with the Federal Government's requirements as to location, access, width and construction (cf. 1956 Legis. Annual, pp. 186–187).

To effectuate this prime purpose, section 340-b confers upon the superintendent the authority to exercise a power which is necessarily plenary and discretionary. In the nature of things the Legislature could not determine in advance the precise location of extensive arterial highways and how best to integrate them, especially in view of the constantly shifting requirements imposed by the Federal Government as a prerequisite to its aid. The Legislature could not possibly delineate every bend in the road. Under the circumstances it adopted the only practicable measure, i.e., it expressly empowered the superintendent, acting on behalf of the State, to acquire such property as *he* deems necessary for the interstate highways prescribed by it (Highway Law, § 340-b, subds. 3, 5). In this respect the Legislature simply followed its own prior pattern (Highway Law, § 349-c, subds. 2.5, 2.6, 3.3 [as added by L. 1944, ch. 543 and amd. by L. 1945, ch. 619).

To emphasize that respondent, with respect to the building and the precise location of the prescribed highways, has carte blanche and is authorized to ignore any prior inconsistent statute, the Legislature in both its 1944 and 1956 amendments to the Highway Law has specifically provided that the superintendent shall exercise his newly granted powers " Notwithstanding any inconsistent provisions of this chapter or any other law, general or special " (Highway Law, § 340-b, subd. 3; § 349-d).

And to emphasize the unlimited scope of the property which the superintendent is empowered to acquire, the Legislature in its 1956 amendment expressly defined property " to include lands, waters, rights in lands or waters, structures, franchises and interests in land * * * and all interests in such property less than full title, such as easements * * * rights-of-way, uses, leases, licenses and all other incorporeal hereditaments and every estate, interest or right legal or equitable " (Highway Law, § 340-b, subd. 3 [L. 1956, ch. 651]).

It is obvious that unless respondent is freed from any prior statutory restrictions (just as the Legislature itself is when acting), the entire State highway building and integration program will be imperiled. It was undoubtedly such apprehension which moved the Legislature to unconditionally authorize the superintendent to acquire such property as he may deem necessary for the new interstate highways and connections prescribed in section 340-a of the Highway Law. Of course respondent, in exercising this power, acted as the Legislature's agent by

determining for it what property was necessary. He is authorized, after making such determination, to proceed with the acquisition of the needed land for the highways prescribed. No one will deny that, if the Legislature itself had expressly determined that the strip of land in suit was necessary and should be acquired for the purpose of building an integrated interstate highway, the exemption from condemnation created by the earlier 1927 statute would be *ipso facto* terminated. The situation is no different because the Legislature acted, as it did here, through respondent as its *alter ego* and authorized him to make such determination for it. He is simply the medium through whom it has elected to express its intent retroactively. Thus we have, in effect, an express legislative termination of the exemption, or an express legislative repeal of the statute creating it.

It may also be noted that there is no constitutional inhibition against the Legislature's delegation of power to the superintendent to determine what property is necessary for the building of the highways (*Matter of City of Rochester* v. *Holden,* 224 N. Y. 386, 391; *Matter of Fowler,* 53 N. Y. 60, 62; *St. Louis Merchants' Bridge Term. Ry. Co.* v. *United States,* 188 F. 191; 15 Cyc. 630–632).

In any event, the exemption must be deemed to have been terminated by necessary implication under the well-established rule that if two statutes *in pari materia* are incongruous and irreconcilable with, or repugnant to, each other the later enactment must control (*Matter of Commissioners of Cent. Park,* 50 N. Y. 493, 496; *People ex rel. Strough* v. *Board of County Canvassers of Jefferson County,* 77 Hun 372, affd. 143 N. Y. 84; *Cimo* v. *State of New York,* 306 N. Y. 143, 148–149; *People ex rel. Bronx Parkway Comm.* v. *Common Council & Bd. of Estimate of City of Yonkers,* 229 N. Y. 1, 8; *Matter of Morris* v. *Neider,* 259 App. Div. 49). Here, bearing in mind the urgent public purposes sought to be achieved by the later statute, it is clear that the earlier 1927 statute creating the exemption is incongruous and irreconcilable with, and repugnant to, the later statute. Consequently, the 1927 statute must yield. Where the legislative intent to terminate a license or right, or to abrogate a statute, is clear, such intent will be effectuated by the courts, even though the result may be a repeal by implication (*People ex rel. Bronx Parkway Comm.* v. *Common Council & Bd. of Estimate of City of Yonkers, supra; Gerry* v. *Volger,* 252 App. Div. 217; *Commonwealth* v. *Broad St. R. T. Co.,* 219 Pa. 11; 1 Sutherland on Statutory Construction [3d ed.], § 2006). In other words, the termination or repeal *nomination* of the prior exemp-

562

tion or statute is not indispensable. It is sufficient if the intent to effect such termination be implicit in the subsequent statute, as it is here.

This result will facilitate a most essential public purpose. It will promote the common defense and stimulate industrial recovery without thwarting or impairing in the slightest degree the noble charitable cause being served by the appellant, for it is admitted that the small parcel of land here involved is not needed for its proper operation.

The order and judgment should be affirmed.

UGHETTA, J., concurs with MURPHY, J.; BELDOCK, Acting P. J., concurs in separate opinion; HALLINAN, J., dissents and votes to affirm without modification, in opinion in which KLEINFELD, J., concurs.

Order modified (1) by striking from the first paragraph thereof the words '' denied in all respects '' and by substituting therefor the word '' granted '' and (2) by striking from said order everything following the word '' denied '' in the second ordering paragraph. As so modified, order insofar as appealed from affirmed, without costs, and judgment vacated.