LOUISE C. GERRY, 189 Audubon Drive, Snyder, Erie County, New York, Plaintiff, v. OTTO W. VOLGER, as Commissioner of Jurors of Erie County, Defendant.

Fourth Department, September 1, 1937.

*James O. Moore,* for the plaintiff.

*Jacob Tick* and *Paul J. Batt,* for the defendant.

*Henry Epstein, Solicitor-General,* for the State of New York.

LEWIS, J. Upon a submitted controversy the parties to this action seek a declaratory judgment determining whether on and after September 1, 1937 — the effective date of chapter 513 of the Laws of 1937 — a woman, who is a citizen and resident of Erie county and possesses all other qualifications required by statute, may serve as a juror in that county.

From the agreed facts it appears that on September 1, 1937, the plaintiff presented herself at the office of the defendant commissioner of jurors and requested that she be examined upon her qualifications as a juror and, if found qualified, that her name be added to the jury list for the county of Erie. Although conceding that plaintiff possessed all the statutory qualifications of a juror, except the circumstance of her sex, the defendant has refused to examine her further as to qualifications upon the ground that, under chapter 369 of the Laws of 1895, as amended by chapter 690 of the Laws of 1911, a woman is not legally eligible to act as a juror in the county of Erie and accordingly is not entitled to placement upon its jury list.

The statute upon which defendant relies is chapter 369 of the Laws of 1895, as amended by chapter 690 of the Laws of 1911, an unconsolidated law which created in counties having a population in excess of 300,000 (except the counties of New York and Kings) the office of commissioner of jurors, and defined the functions of such officer. The act, as amended, also provided, in part: " § 20. The qualifications of jurors, in the counties embraced within this act shall be as follows: 1. A male citizen of the United States and a resident of that county."

This particular qualification for jury service in the counties to which the act applies, including Erie county, and which limits eligibility to male citizens, is the same qualification as that formerly prescribed in the general statute applicable to the State at large. (Judiciary Law, §§ 502, 598, 686, subd. 1.) In other words, prior to September 1, 1937, women were uniformly ineligible as jurors throughout the State. However, on that date an amendment to the general statute became effective (Laws of 1937, chap. 513) which struck from the Judiciary Law, subdivision 1 of sections 502, 598 and 686, respectively, the word " male," thus excising the single word which had previously served to disqualify women as jurors in this State. The enactment of 1937 also added to subdivision 3 of each of the three sections last cited, words appropriate to require of a woman the same property qualifications for jury service as are required of a man and added to the list of exemptions from jury service prescribed by sections 546, 635 and 720 of the Judiciary Law a new exemption: " 7. A woman."

The plaintiff's position is that the amendment to the general statute, made effective by chapter 513 of the Laws of 1937, thus accorded to women throughout the State legal eligibility for jury service upon the same qualifications as men, except that a woman is given the right to claim exemption solely by reason of her sex. Invoking the general statute, as thus amended, in support of her

request that her name be added to the list of those qualified for jury service in Erie county, the plaintiff asserts that, in view of defendant's concession that she is a citizen and resident of Erie county and that she possesses the other qualifications required for service as a juror, she is no longer legally disqualified because she is a woman.

Our inquiry is thus narrowed to the question whether the amendment to the Judiciary Law by chapter 513 of the Laws of 1937 repeals that part of chapter 369 of the Laws of 1895, as amended by chapter 690 of the Laws of 1911, which restricts eligibility for jury service to citizens of the male sex.

It has been said that " ' back of every law is something which is conventionally referred to as public policy ' " (*Mertz* v. *Mertz*, 271 N. Y. 466, 471, 475) which finds expression in our statutes — " the will of the Legislature." (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 413; *People* v. *Hawkins*, 157 id. 1, 12.) In determining the question before us we are influenced at the outset by the fact that by the 1937 amendment to the Judiciary Law the Legislature has introduced a fundamental change in the public policy of the State. Until that amendment and throughout our prior political history, public policy, expressed in various statutes governing the subject, had uniformly declared that women should be ineligible for jury service. In 1937 the Legislature reversed its position upon that subject by withdrawing sex as a qualifying factor. This change was accomplished by amendment to the Judiciary Law, a general statute, without expressly repealing the prior statute of 1895 which the defendant now invokes but which is clearly inconsistent with " the will of the Legislature " as recently declared. The 1895 statute, although in form a general law limited in application to restricted areas, has been treated by counsel in this case as a special law.

We realize that repeal of a statute by implication is not favored. We are also mindful of the rule asserted by defendant that a special law governing a particular subject is not ordinarily repealed by a subsequent statute which is general in character. To the latter rule there is, however, a well-established exception, viz., that a subsequent general statute will repeal a prior special law relating to the same subject where inconsistency exists and the Legislature's intent to effect such a repeal is manifest. " ' A general statute will repeal special or local acts without expressly naming them, where they are inconsistent with it, and where it can be seen from the whole enactment that it was the intention of the Legislature to sweep away all local peculiarities thus sanctioned by special acts, and to establish one uniform system.' * * * ' There is no rule of law which prohibits the repeal of a special act by a general one, nor

is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose of abrogating a particular enactment by a later general statute is sufficiently manifested when the provisions cannot stand together.' " (*People ex rel. Fleming* v. *Dalton*, 158 N. Y. 175, 184. See, also, *People ex rel. Lawrence* v. *Supervisors*, 73 id. 173, 176; *People* v. *Jaehne*, 103 id. 182, 194; *Matter of Dobson*, 146 id. 357, 359, 360; *Pratt Institute* v. *City of New York*, 183 id. 151, 158; *Peterson* v. *Martino*, 210 id. 412, 418; *People* v. *Dwyer*, 215 id. 46, 51; *Crawford* v. *City of Newburgh*, 231 App. Div. 613, 614, 615. Cf. 1 Lewis' Sutherland Statutory Construction [2d ed.], § 247, pp. 461–470; McKinney's Statutes and Statutory Construction, § 175, pp. 242–244.)

We may presume that the Legislature intended to impart to its enactment of 1937 such an effect upon the body of State law governing jury trials that uniform harmony and consistency will result from its application. Likewise we may presume it was intended that the enactment, when applied as a rule of conduct, would accord with principles of sound public policy. (*East* v. *Brooklyn Heights R. R. Co.*, 195 N. Y. 409, 412; *People ex rel. Hallock* v. *Hennessy*, 205 id. 301, 306; *People* v. *Santoro*, 229 id. 277, 281, 282; *Surace* v. *Danna*, 248 id. 18, 21.) Indulging in these presumptions, we cannot believe that the Legislature intended that the two statutes now before us should coexist. We find the prior special statute out of harmony with the 1937 amendment to the general law and so inconsistent with it as to be beyond reconciliation if proper regard is had for a uniform jury system. Under such circumstances we apply the rule that " if the new act does not expressly declare the repeal of an earlier statute, it will not be construed as effecting such repeal unless there is such a repugnancy or conflict between the provisions of the two acts as to show that they could not have been designed to remain equally in force. * * * But if the two acts are positively repugnant, and to such an extent that they cannot be reconciled and made to stand together by any fair and reasonable construction, then the one last passed will control and will repeal the earlier law." (Black on Interpretation of Laws [2d ed.], § 107, pp. 351–353. Cf. *Matter of Meyer*, 209 N. Y. 386, 389.)

If, as the defendant contends, the Legislature intended, following its 1937 enactment, to authorize the existence in the State of two jury systems which differ in a fundamental respect where uniformity and consistency had formerly prevailed, we would expect to find at once a sound reason for such an anomalous result. But we find no reason whatever.

No reason has been suggested by counsel and none suggests itself why women citizens who are residents in counties having a population in excess of 300,000 (except the counties of New York and Kings) should be denied the privilege to serve as jurors, while those residing elsewhere in the State are accorded that privilege. Nor was argument to that effect made at any time while the 1937 bill progressed through either branch of the Legislature. Resorting, as we may, to the journals and records of hearings and debates in both Senate and Assembly as an aid to ascertaining the legislative intent in that regard (*Woollcott* v. *Shubert*, 217 N. Y. 212, 221; *Consolidated Laundries Corp.* v. *Roth*, 241 App. Div. 48, 50), we find nothing which indicates a purpose to except any municipality or section of the State from the application of the 1937 amendment to the general law. To the contrary, we find in the agreed statement of facts before us defendant's concession that "There was no claim made or suggested or intimated at any of the hearings or at any of the discussions, or in the debates (in either branch of the Legislature) that the eligibility of women for jury service should be classified geographically, by population, or otherwise, or that any exception should be made respecting the women of the counties of Erie, Monroe, Oneida and Westchester, or that women should have any other qualifications differing from those applying to males in any place in the State of New York." In other words, the history of the enactment of the 1937 amendment with which we are now dealing affords no basis for the claim that the Legislature did not intend it to be given State-wide application.

The injustice and resulting confusion in the administration of law which would follow a ruling that the 1937 amendment was not of State-wide application is another compelling reason why we cannot accept defendant's argument. "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." (*Matter of Rouss*, 221 N. Y. 81, 91.) Having in mind the fact that trial by jury has been jealously guarded as an essential factor in our judicial system (U. S. Const. 7th Amendt.; State Const. art. 1, § 2; Civil Rights Law, § 13; *Strauder* v. *West Virginia*, 100 U. S. 303, 308), it is hard to conceive of a quicker or more effective way to bring confusion and uncertainty into our jury system and thus destroy its chief purpose, than for the Legislature to adopt a plan whereby women would serve as jurors in one county and be denied that privilege in counties adjoining. It is our view that a result so manifestly unwise and so offensive to sound public policy was never intended by the Legislature.

Accordingly we adopt that construction which will promote uniformity, not diversity, in the administration of law throughout the State. In reaching that conclusion we apply the principle that where, as in this instance, the Legislature has given expression to a fundamental change in public policy and has enacted a new general law upon the subject, from which it is apparent that a broad, new policy — general in terms and scope — was designed, " it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory." (*Roche* v. *Mayor, etc.*, 40 N. J. L. 257, 262, 263.)

We believe that the coexistence of the provisions of chapter 369 of the Laws of 1895, as amended, upon which the defendant relies, and the subsequent general statute (Laws of 1937, chap. 513), which the plaintiff invokes, would be destructive of the object for which the later act was passed. Accordingly, we conclude that the enactment of the 1937 amendment repealed that portion of the prior statute which restricted eligibility for jury service to citizens of the male sex.

Submitted controversy determined in favor of plaintiff solely to the effect that chapter 513 of the Laws of 1937 repealed chapter 369 of the Laws of 1895, as amended by chapter 690 of the Laws of 1911, in so far as it made the male sex a prerequisite for eligibility to jury service, without costs to either party.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Submitted controversy determined in favor of plaintiff solely to the effect that chapter 513 of the Laws of 1937 repealed chapter 369 of the Laws of 1895, as amended by chapter 690 of the Laws of 1911, in so far as it made the male sex a prerequisite for eligibility to jury service, without costs to either party.