14

FLAVIS PIERCE and ROBERT PIERCE, Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

(*Jackson*, April Term, 1958.)

Opinion filed June 6, 1958.

WILLARD E. SMITH, Henderson, for plaintiffs in error.

THOMAS E. FOX, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Plaintiffs in error, hereinafter called defendants, were convicted for the offense of assault and battery, were fined $1,000 each and were sentenced to 11 months and 29 days in the County jail of Chester County. They have appealed and assigned several errors. The first assignment is too general. The second assignment is as to the

preponderance of the evidence, which will require a brief statement of same.

The incident herein occurred in and nearby a "beer joint" or a sort of night club operated by Flavis Pierce near Henderson, Tennessee, called "The Block House", which was operated for him by his brother Robert. As a sideline, Robert was engaged in bootlegging until he was apprehended a few days prior to this occurrence by the Federal Alcohol Tax officers. The defendants conceived the idea that one Hester Patterson was the informant on Robert Pierce. The proof indicates that Flavis had decided to give up his lease and to cease operating this beer joint and that at the time of this occurrence he was not catering to the general public but he had a quantity of beer on hand and some other items, such as a few fixtures, which he wished to dispose of.

The victim of the assault, Hester Patterson, testified that Flavis had driven by his home several times making inquiry for him when he was not at home. That on this afternoon of Thursday, September 13, 1956, after he had come home from picking cotton, Flavis came by his home and offered to sell him some beer at $3 per case, which was less than wholesale price. They left in the car belonging to Flavis, stopped at another beer joint on the way to the Block House and picked up Robert Pierce and then continued on to the Block House. That as soon as they had entered the Block House, the door was closed, a pistol was stuck in his ribs by Flavis and Patterson was told that they were going to beat him to death because he had informed on Robert. He said they then beat him over the head with a slapjack, a toy baseball bat, a loaded shotgun and a loaded pistol which was fired

during the episode and that after working him over for a while, they demanded $500 as the price for his release. He told them he could not raise over $200, so they proceeded to work on him further. As a result, he was badly beaten about the head, as a result of which about a dozen places were required to be sewed up and three of his upper front teeth were knocked out. That two young men drove up to the place and opened the door from the outside, which Patterson himself says he had been unable to open from the inside and with that, Patterson ran out in front of the place, yelling to these other two young men for help, but they turned around and drove away. He testified that Flavis then followed him outside, knocked him down and beat on him some more and then went back in the house to get a shotgun whereupon the victim jumped up and started running across the field and was pursued by Flavis and caught up with about 200 yards away, where Flavis knocked him down on the highway and stamped him with his feet. There were no eyewitnesses to the occurrence inside the Block House but there were witnesses to the fact that they ran across the field and the continuance of the beating on the highway. As a result of this, in addition to the above injuries, his left eye was completely shut, the left side of his face was extremely swollen, and his left eardrum and his nose hemorrhaged, causing him to spit up quite a lot of blood.

The defendants took the position that Robert had nothing to do with the fight other than try to separate the two and Flavis testified that Patterson made the attack on him and that Patterson was a much larger man and that Flavis was really the one that was beaten up.

The sheriff was called in the meantime and he arrived on the scene while Patterson was still on the ground

along the side of the highway. He arrested Flavis, took him to jail, then obtained the keys to the Block House, went back to the same and in searching the place he found considerable blood around the place, the broken little baseball bat, the torn slapjack, both of which were bloody and in the refrigerator he found a shotgun with considerable blood stains on it, and further, two bullets that had been fired and the three teeth, as well as some other bits of evidence of the struggle.

The wife of Flavis testified that she asked the sheriff to get the keys to her husband's automobile and that the sheriff obtained not only that key but also the key to the Block House and that he then required her to go with him and that he went in the Block House after he had told her that she had to go with him. The sheriff made no denial of this but said that he did not remember the circumstances.

The jury had all this testimony before them and after examining the same, we are satisfied that they were fully warranted in reaching the verdict they did.

The next important question raised is whether the court committed error in failing to quash the indictment because four members of the grand jury were women. It is said that the indictment is void because Ch. 115, Private Acts of 1911, providing for a jury in Chester County, states that *only men* may serve on the grand jury; that T.C.A. sec. 22-101 prescribing the qualifications for jurors, which under the 1951 amendment now provides that every *person* 21 years of age is eligible for jury service, does not affect said above mentioned Private Act because T.C.A. sec. 1-205 provides that local or private acts are not repealed by the enactment of the Ten-

nessee Code Annotated, unless repealed by necssary implication.

The State insists, and we agree, that T.C.A. sec. 22-101 affects the rights of citizens in their individual relationship rather than the County in its governmental capacity; and this being true, in order for said Private Act of 1911 to be valid, there must appear some good reason why women in Chester County should not be permitted to serve on juries since they are permitted under the general law to serve in all other counties of the State. *Bandy v. State,* 185 Tenn. 190, 192, 204 S.W.2d 819; and *City of Memphis v. Yellow Cab,* 201 Tenn., 71, 296 S.W.2d 864, 866, wherein it is said:

> "This Private Act of 1943, whether or not formally repealed by the 1956 Code, is void of legal integrity because it purports, in violation of Article XI, Section 8 of the Tennessee Constitution, to suspend the general law reflected in the sections mentioned of the 1950 Code Supplement, and, next, of the 1956 Code."

See also, the old case of *Pesterfield v. Vickers,* 43 Tenn. 205, wherein it was held, while the charter of a municipal corporation enacted by the legislature was saved from repeal, still a city ordinance inconsistent with the general law becomes inoperative.

It so happens that this same question was raised in *Gerry v. Volger,* 252 App. Div. 217, 298 N.Y.S. 433. That case is practically on all fours with the instant case and it was held that the general act repealed the former special act. Hence, we overrule this assignment.

The next assignment is predicated on the following: For a few minutes before the trial jury was sworn

in at noon, the sheriff and two other officers had charge of the jury while counsel took up a matter outside the presence of the jury. The sheriff was the prosecutor and on the first day of the trial after the luncheon recess, the sheriff was sworn in as a witness for the State. Objection was made to the court permitting the sheriff to testify for both of the above reasons. Defendants cite *McElrath v. State*, 32 Tenn. 378, and *Clapp v. State*, 94 Tenn. 186, 30 S.W. 214, in which cases there was an unexplained opportunity for exerting improper influence on the jury. We do not think that the facts of this case have any reasonable connection with the situation existing in either of those two cases. Nor does the fact that the sheriff swore out the warrant for the arrest of these defendants nor because of any other interest in the case is he disqualified as a witness. *Oliphant v. State*, 153 Tenn. 130, 138, 282 S.W. 206.

It is next insisted that the search of the Block House by the sheriff within two hours after the arrest of defendant was an illegal search because he had no search warrant.

We have had this question of unreasonable search up in two recent cases, the first being *Liakas v. State*, 199 Tenn. 298, 306 et seq., 286 S.W.2d 856; and *Atkins v. Harris*, 202 Tenn., 489, 304 S.W.2d 650, in which the question was fully discussed and we do not deem it necessary to repeat same. We think that where, as in this case, the sheriff arrived on the scene while one of the defendants was still making an assault upon the victim within about 200 yards of the place of origin and the condition of the victim was such as to indicate that weapons or blunt instruments of some sort had been used upon his head and face, the exhausted condition of the victim, the condition

of the defendants as compared with that of the victim, the presumed knowledge of the sheriff of the local conditions with reference to beer joints generally, in short, all of the surrounding circumstances, the sheriff, we think, was entitled to search without a warrant the Block House for any articles that might be evidence of guilt of the offense for which the arrest had been made. The search and the articles discovered have a reasonable relationship to the offense for which the arrest was made. Hence, we overrule this assignment. The pictures taken the next day were merely cumulative and certainly could not be prejudicial.

 The last complaint is that the court refused to charge the jury as follows:

"I charge you further that before you would be warranted in convicting the defendants upon circumstantial evidence, the evidence must be such as to exclude every other reasonable hypothesis or explanation, except that of guilt."

It was not error for the court to decline to give this instruction because the same would have been misleading in that it in effect tells the jury that this is strictly a circumstantial evidence case. Whereas the fact is that there is ample direct evidence upon which the jury could have found the defendants guilty as they did, because there were witnesses who testified to the assault and battery which Flavis Pierce committed just outside in front of the Block House before he chased Patterson across the field and then witnesses to the further assault made when Patterson reached the shoulder of the highway.

Therefore, under the circumstances, this requested instruction is incomplete under the facts of the case.

All assignments are overruled and the judgment below is affirmed.