LOUIS F. DE SENA, Respondent, *v.* WILLIAM O. GULDE et al., Constituting the Board of Trustees of the Incorporated Village of Hempstead, Appellants, and WILBERT G. LEWIS et al., Intervenors-Defendants.

Second Department, December 6, 1965.

166

*Frederick C. Edel* for appellants.

*Gehrig, Ritter, Coffey & Stein* (*Charles C. Ritter* of counsel), for respondent.

HOPKINS, J. The respondent is the owner of a vacant parcel of land in the Village of Hempstead. The appellants are the members of the Board of Trustees of the village. Claiming that a zoning ordinance adopted by the appellants deprived him of his property in violation of his constitutional and statutory rights, the respondent sued for a declaratory judgment that the ordinance was illegal and void. After issue was joined, and neighboring property owners were allowed to intervene in sup-

port of the ordinance[1], the respondent moved for summary judgment, and it was granted.

The appellants contend that (1) the ordinance is presumptively valid, (2) there are facts in existence which sustain the adoption of the ordinance, and (3) a trial is accordingly required.

The parties stipulated that the respondent's motion be considered as addressed to the pleadings, doubtless because the admissions in the defendants' answer, and the unrefuted statements in the affidavit supporting the motion, clearly posed the issue in the case. Thus presented, the facts may be fairly summarized as follows:

After the respondent had acquired his property, the appellants adopted an amendment to the village zoning ordinance on June 4, 1963, by which respondent's property, along with adjoining property, was placed in a light manufacturing district. That amendment was enacted as the result of the preparation of a master plan by consultants engaged by the village; the master plan had been approved by the appellants and had designated the area for light manufacturing use.[2] Opposition to the adoption of the amendment developed both before and after the action of the appellants. Subsequent to its adoption, the opposition took the form of threats of economic boycott against the merchants of the village, of picketing of the village hall and of the shopping section, and of demonstrations. A delegation of village merchants urged that the amendment in effect be repealed, and the zoning of the property affected reinstated to a residential district. The appellants met with the leaders of the opposition and agreed to reconsider their decision; thereafter a public hearing was scheduled on July 30, 1963 for the purpose of considering a further amendment to the zoning ordinance.

At the hearing on July 30, 1963 the Mayor read the following statement:

" The Board of Trustees, after considerable discussion and investigation, after lengthy public hearings, after speaking with numerous persons and groups, and after applying their own experience, both as members of the Board and as long time residents of the Village, honestly and in good conscience, believed it to be in the best interest of the Village as a whole,

---

1. The intervenors were owners of a one-family residence directly across the street from the respondent's property. They have not appealed.

2. The master plan was prepared as the consequence of an application by the village for financial assistance to the United States with respect to an urban renewal program proposed by the village.

to have changed this zone to light industry. The fact that the property was in a negro neighborhood had no bearing whatsoever on the decision of the Board.

"However, the motives of the Board have been impugned, and the members of the Board have been personally assailed and accused of acting for ulterior motives. Storekeepers were boycotted and picketed, and threats were made to destroy Hempstead by those who seek to make a race issue out of an action by the Board that in no stretch of the imagination could be construed as a race problem.

"The Board tried to reason with those who so vehemently opposed the action of the Board, but those opposing would not reason, would not study the situation, and would neither compromise nor face the matter with an open mind. The Board has been given an ultimatum, ' Either change the zone, or we will picket and boycott, we will bring in outside help and continue until Hempstead is destroyed '.

"It is not the intention of the Board to make the merchants suffer. It is not the intention of the Board to permit shoppers to become intimidated and shop elsewhere. It is not the intention of the Board to give those who have made this into a race issue a pretext to hold mass demonstrations, picketing, etc. which could result in riots and injury to innocent people. We have read too much about this in other communities.

"We owe a duty to the community as a whole to prevent such occurrences, and we publicly and openly denounce some of the tactics employed. We have weighed the advantages of both sides, but we feel the obligation to prevent riots and injuries to residents, merchants, and shoppers outweigh the benefits to the Village from the present change. We still feel that the present change is for the best. If the people in the area affected feel so strongly about this matter, then they and they alone, will have no one but themselves to blame when they find the schools overcrowded; when taxes rise, as rise they will; and when increased demands on municipal services will result in higher taxes, all of which would be avoided by a well-planned light industrial zone."

Despite objections by the respondent and the other owners of the affected property, the appellants then adopted an amendment to the zoning ordinance placing the same area (including respondent's property) in a Residence " A " district.[3] It is this amendment which is challenged by the respondent as the

---

3. Residence " A " district uses are confined to single-family detached dwellings.

product of an unconstitutional and unlawful exercise of power by the appellants.

When a municipal legislative body enacts an ordinance, a presumption of validity attaches to its resolution (*Rodgers* v. *Village of Tarrytown,* 302 N. Y. 115; *Shepard* v. *Village of Skaneateales,* 300 N. Y. 115). The presumption of validity has the effect of (1) imposing the burden of proof on the party questioning the ordinance; and (2) sustaining the ordinance if the propriety of its enactment is fairly debatable. The content of the burden on the assailant is sometimes said to extend further than a mere preponderance of the evidence to proof beyond a reasonable doubt (*Wiggins* v. *Town of Somers,* 4 N Y 2d 215; but, see, *Thomas* v. *Town of Bedford,* 29 Misc 2d 861, 866, affd. 15 A D 2d 573, affd. 11 N Y 2d 428). Still, the presumption is not irrebuttable (*Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222), and perhaps we may best rationalize the presumption as a reminder of the force of legislative judgment which must be supported by the courts if there is '' any state of facts either known or which could reasonably be assumed '' on which the ordinance could be based (*United States* v. *Carolene Prods. Co.,* 304 U. S. 144, 154; cf. *Town of Islip* v. *Summers Coal & Lbr. Co.,* 257 N. Y. 167).

The judicial duty still remains to declare an ordinance invalid whenever the municipal power has been exceeded, or has been exercised in an arbitrary or discriminatory fashion (*Barry* v. *Town of Glenville,* 9 A D 2d 822, affd. 8 N Y 2d 1153). Here the respondent's proof, at the least, establishes that the appellants, notwithstanding their judgment that the respondent's land was appropriately zoned for light manufacturing purposes, for reasons stated in the Mayor's words as '' the obligation to prevent riots and injuries to residents, merchants, and shoppers '', and the duty not '' to make the merchants suffer '', passed the amendment undoing the proper zoning. We think that in this perspective the respondent's proof has rebutted the presumption of validity, and that the appellants must justify their action in rezoning the respondent's property by showing that they moved within constitutional limits. Their claim of justification rests on the broad objective of general welfare; and they urge that the conditions of public disorder and prospective economic loss within the village were fairly in the competence of a municipal legislative body to consider in the adoption of a zoning ordinance.

We pause, before discussing this argument, to note that the appellants have not opposed, either here or below, the use of the Mayor's statement at the public hearing preceding the enact-

ment of the challenged amendment on the ground that the motives of a legislative body may not be the subject of inquiry in determining the validity of legislation (*Bacon* v. *Miller*, 247 N. Y. 311, 318; *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; Ann. 32 A. L. R. 1517). There is a well-recognized exception to the rule where the motivation is disclosed on the face of the act (5 McQuillin, Municipal Corporations [3rd ed.], § 16.90, p. 321), assimilable to the declaration of legislative intent, or as a part of the legislative proceedings (cf. *Matter of Schwartz* v. *Lefkowitz*, 21 A D 2d 13, 16; *Gerry* v. *Volger*, 252 App. Div. 217, 221; and, see, *Matter of Delmar Box Co.* [*Ætna Ins. Co.*], 309 N. Y. 60). In any event, we cannot think of a clearer example of evidentiary *indicia* of legislative motivation than the Mayor's statement read in the presence of the members of the Board of Trustees as an exposition of the action about to be taken by the board, and we consider the statement properly admissible in weighing the validity of the action.[4]

The invocation of the term " general welfare " by the appellants to validate the amendment focuses our inquiry on a concept blurred in scope and application. It is used in sections 175 and 177 of the Village Law, which is said by one text writer to be a typical grant to municipalities of the power to zone (1 Rathkopf, Law of Zoning and Planning, p. 2–7). Thus, in section 175 the Board of Trustees is empowered to regulate the use of land " For the purpose of promoting the health, safety, morals, or the general welfare of the community; " and in section 177 it is provided that the regulations shall be made in accordance with a comprehensive plan and, among other things " to promote health and the general welfare ". (See, also, Village Law, § 89, subd. 30.) But, though general welfare, as a term of art, may be synonymous with the police power (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 298; *Matter of Concordia Collegiate Inst.* v. *Miller*, 301 N. Y. 189, 195), the police power to promote general welfare is not plenary (*Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222, 230–231, *supra*), nor, indeed, can the municipal exercise of zoning power venture beyond the limits of its grant from the Legislature (cf. *Whittaker* v. *Village of Franklinville*, 265 N. Y. 11, 14; *People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484, 493). In short, the zoning ordinance must meet the traditional tests of constitutionality and fit within

4. The rule itself is firmly based on considerations of the unreliability of parol evidence as to the statements of legislators either before or after the event of the legislation, and the uncertainty whether the statement represents the view of all the legislators or only the one quoted. Neither of these considerations is present here.

the statutory delegation of power (cf. *Matter of Barker* v. *Switzer*, 209 App. Div. 151, 153). There is no transcendental or magical effect from the use of term "general welfare" in justifying the adoption of the ordinance.

We think that the challenged amendment, measured by these standards, does not pass muster. We need hardly go further than the command of section 177 of the Village Law that the zoning regulations "shall be made in accordance with a comprehensive plan," and "with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout [the] municipality." Here, it is undisputed that the appellants did not follow their own master plan in passing the amendment, nor even their own conviction regarding the most appropriate use of the respondent's land.

The zoning power, as limited by the statutory grant, must operate in relation to the use of land and not for the accomplishment of purposes extraneous to that relation. If safety factors or health measures require zoning controls, they must involve safety and health characteristics which relate to the land under the regulation. The fear of disorder arising from the threat of picketing and demonstrations, and the resultant economic loss, which the appellants considered as bases for the zoning regulation here, are alien to the legitimate objects of zoning. Doubtless there exists authority in the Village Law to meet the problem (cf. Village Law, § 89, subd. 58-a; § 188-a *et seq.*), but the power of zoning respondent's land to meet the problem was not open to appellants.

Moreover, we think that constitutional limitations prevented the adoption of the amendment. In our opinion, the balance between the State and the individual was not properly maintained by imposing the burden of economic disadvantage on the respondent to pacify the anger of the protestants and to avoid financial loss to the community (cf. *Shepard* v. *Village of Skaneateles*, 300 N. Y. 115, 118, *supra*). In this sense, the amendment was discriminatory and violated the equal protection of the laws to which the respondent was entitled by thrusting a special hardship upon him (cf. 1 Rathkopf, Law of Zoning and Planning, ch. 7; Anderson, Zoning Law and Practice in New York State, § 5.10).[5] The respondent's land was constitu-

---

5. It should be emphasized that appellants do not support the zoning of the respondent's property on any claim of necessity to preserve economic equality for the residents in the neighborhood (cf. Anderson, Zoning Law and Practice in New York State, § 7.22), or to prevent segregation (cf. *Buchanan* v. *Warley*, 245 U. S. 60; *City of Richmond* v. *Deans*, 281 U. S. 704).

tionally protected from a zoning classification which singled it out from land similarly situated for a purpose which affected alike all land in the municipality (cf. *Fritts* v. *City of Ashland,* 348 S. W. 2d 712 [Ky.]; *Pearce* v. *Village of Edina,* 263 Minn. 553; *Keppy* v. *Ehlers,* 253 Iowa 1021; Ann. 51 ALR 2d 263, 286–288).

The judgment should be affirmed, with $10 costs and disbursements to the plaintiff.

BELDOCK, P. J., UGHETTA, RABIN and BENJAMIN, JJ., concur.

Judgment affirmed, with $10 costs and disbursements to plaintiff.