*113 OPINION OF THE COURT
Meyer, J.
Nothing in the zoning enabling provisions of the General City Law, the historical preservation provisions of the General Municipal Law or the Landmarks Preservation provisions of the Rye City Code empowers the City to mandate the manner in which property may be owned or held or to impose upon the owner of a tract containing historic structures, or purchasers of properties neighboring the tract, the cost of rehabilitation or enhancement of the properties. The order of the Appellate Division should, therefore, be affirmed, with costs.
I
Plaintiff is the owner in fee of a parcel of land situated in the City of Rye (City) of approximately 22 acres on which are located the Jay Mansion, built in 1838 by Peter Jay, son of John Jay, the first Chief Justice of the United States Supreme Court, and another building known as the Carriage House, built around 1912 in the Colonial Revival style. There is some dispute between the parties concerning the historic or landmark significance of the Carriage House, but for purposes of this opinion we assume that both buildings have such significance. It is unnecessary to detail the negotiations carried on from 1979 until 1983 between the City and plaintiff’s predecessor in title[1] and between the City and plaintiff, and the various rezoning proposals that were made during those negotiations, although a few pertinent and uncontested facts developed during those negotiations are referred to below.
When acquired by plaintiff’s predecessor the property was zoned R-2, as were neighboring properties, some of which were used, however, for public purposes or office use under nonconforming uses. R-2 zoning permits single-family detached homes on not less than one-half-acre plots, and plaintiff’s property would have accommodated 38 such dwellings. In June 1983, the City Council adopted Local Law No. 5-1983, which added a new section 197-13.2 to the City Code creating the Alansten Landmarks Preservation District (LPD-A). As the revised zoning map demonstrates, and defendants do not deny, the only property zoned LPD-A was plaintiff’s 22 acres. Plaintiff then began the present action, which in seven causes of action sought an injunction against enforcement of the section, a declaration that it is invalid as ultra *114 vires, unconstitutional, site specific, spot zoning and not in accordance with a well-considered zoning plan, and money damages under 42 USC § 1983. Defendants moved for summary judgment declaring the local law constitutional and otherwise dismissing the complaint. Plaintiff cross-moved for partial summary judgment in its favor. Supreme Court held that there were issues concerning constitutionality requiring trial, but that the ordinance, as a hybrid containing elements of both zoning and historic preservation regulation, was not invalid as site-specific or spot-zoning and had not been shown not to be in accordance with the City’s comprehensive plan, and that the section 1983 action would not lie with respect to legislative action. Defendants’ motion for summary judgment was, therefore, granted unless plaintiff demonstrated at a plenary trial that the section prevented it from realizing any economic benefit from its property. Plaintiff’s cross motion was denied. Plaintiff appealed to the Appellate Division, as limited by its brief, from Special Term’s order except as to the section 1983 cause of action; defendants appealed from so much of that order as directed a trial on constitutionality and denied summary judgment declaring the section valid and constitutional. The Appellate Division, in a memorandum which referred only to the zoning aspect of the section, reversed and declared the section "invalid as it constitutes an improper regulation of the form of ownership of property.” (109 AD2d, at p 815.) We agree that it is unnecessary to consider the constitutional issues and that the zoning enabling provisions under which the City acted do not authorize it to regulate ownership, and hold further that nothing in the historical preservation provisions of the General Municipal Law or the Landmarks Preservation chapter of the City Code, upon both of which the City relies, whether considered separately or in conjunction with the zoning enabling provisions of the General City Law, empowered the City to enact the section in its present form. We, therefore, affirm.
II
The section as enacted declares that in order to provide for flexibility in the City’s zoning "so that the significant historic buildings, the Jay Mansion and the Carriage House, and site features which characterize this site * * * are preserved for the future and that new construction be undertaken with care and consideration for these features and the environment”, the new district is adopted. Subdivision B establishes standards for the new district, which include that "[t]he lot as approved shall have a minimum area of twenty-two (22) acres and shall be and remain in single *115 ownership”; that "[t]he exterior of the Jay Mansion and Carriage House shall be rehabilitated and the interiors converted to residential use”, for the Jay Mansion not to exceed three units and for the Carriage House not to exceed six; that there be a trapezoidal view way 90 feet in width at the rear of the Jay Mansion and 300 feet in width at the southerly property line; that the new dwelling units may not be occupied until the exteriors of the Jay Mansion and the Carriage House have been restored and the interiors converted to residential use and available for occupancy and that a bond be posted to assure such rehabilitation and conversion; and that the application for site plan approval be accompanied by, among other things, a draft condominium offering statement together with a draft of an easement and/or agreement for perpetual maintenance of the exteriors of the Jay Mansion and the Carriage House. Neither the statutes authorizing enactment of zoning provisions nor those dealing with historic landmarks empower the City Council to adopt a local law with such provisions, nor does anything in the Landmarks Preservation chapter of the City Code support its so doing.
A
Zoning laws are to be given a strict construction because they are in derogation of common-law rights (Matter of 440 E. 102nd St. Corp. v Murdock, 285 NY 298, 304; see, Matter of Frishman v Schmidt, 61 NY2d 823). Moreover, there being no inherent power to enact zoning or land use regulation, an ordinance or local law provision for which legislative delegation of power cannot be found is ultra vires and void (Matter of Kamhi v Planning Bd., 59 NY2d 385). Power to adopt provisions not expressly forbidden by the enabling authorization may, however, be implied where there exists independent justification for provisions within the spirit of the enabling legislation (Collard v Incorporated Vil. of Flower Hill, 52 NY2d 594, 602).
The enabling provision for residential zoning in cities is General City Law § 20 (24).[2] That subdivision empowers a city "To regulate and limit the height, bulk and location of buildings hereafter erected, to regulate and determine the area of yards, courts and other open spaces, and to regulate the density of population *116 in any given area, and for said purposes to divide the city into districts. Such regulations shall be uniform for each class of buildings throughout any district, but the regulations in one or more districts may differ from those in other districts. Such regulations shall be designed to secure safety from fire, flood and other dangers and to promote the public health and welfare, including, so far as conditions may permit, provision for adequate light, air, convenience of access, and the accommodation of solar energy systems and equipment and access to sunlight necessary therefor, and shall be made with reasonable regard to the character of buildings erected in each district, the value of land and the use to which it may be put, to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of buildings and enhance the value of land throughout the city.” (Emphasis supplied.)
Nothing in that subdivision speaks to ownership rather than use, and while it does not expressly forbid provisions relating to ownership, the City suggests nothing within the spirit of zoning legislation generally or this subdivision specifically that offers justification for implying such power. Indeed, the cases are legion, in this State and elsewhere, which hold that “zoning * * * in the very nature of things has reference to land rather than to owner” (Vernon Park Realty v City of Mount Vernon, 307 NY 493, 500) and that it is a “fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it” (Matter of Dexter v Town Bd., 36 NY2d 102, 105; accord, Matter of Weinrib v Weisler, 27 NY2d 592, affg 33 AD2d 923; Allen v Town of N. Hempstead, 103 AD2d 144, 146; North Fork Motel v Grigonis, 93 AD2d 883; see, Matter of Park W. Vil. Assoc. v Abrams, 65 NY2d 716). Most of the out-of-State cases hold, as did the North Fork Motel case, that a zoning ordinance cannot be used to exclude a condominium.[3] The City correctly notes that exclusion of condo *117 miniums is a different proposition than requiring that property in a given area be held in condominium ownership. However, we agree with the Appellate Division’s conclusion that the distinction is without a difference, or, if difference there is, that there exists no independent justification within the spirit of subdivision 24’s zoning provision from which the power to require condominium ownership can be implied.
Nor does General City Law § 37, which contains the cluster zoning authorization applicable to cities such as Rye, provide such justification. Under its provisions the Planning Board is authorized to make reasonable changes in the zoning regulation, provided that the average density of the land not be greater than is permitted in the district in which the land lies. Although what the legislative body can authorize its Planning Board to do, it can do itself by appropriate amendment of its zoning ordinance (see, Cummings v Town Bd., 62 NY2d 833, 834; Rodgers v Village of Tarrytown, 302 NY 115, 123), the section contains nothing which indicates an intention to do more than allow deviation from fixed dimensional zoning upon application of the owner in order to accommodate group houses, apartment houses or stores.[4] Power to require development of a 22-acre parcel in condominium ownership cannot be implied from its provisions, therefore, any more than can it be implied from General City Law § 20 (24).
B
Authority to enact section 197-13.2 of the Code of the City of Rye does not exist, therefore, unless it can be found in the historical preservation provisions contained in section 96-a and article 5-K of the General Municipal Law or the Landmarks Preservation provision of the Rye City Code (ch 117).
Section 96-a of the General Municipal Law reads as follows: "In addition to any power or authority of a municipal corporation to regulate by planning or zoning laws and regulations or by local laws and regulations, the governing board or local legislative body of any county, city, town or village is empowered to provide by regulations, special conditions and restrictions for the protection, enhancement, perpetuation and use of places, districts, *118 sites, buildings, structures, works of art, and other objects having a special character of special historical or aesthetic interest or value. Such regulations, special conditions and restrictions may include appropriate and reasonable control of the use or appearance of neighboring private property within public view, or both. In any such instance such measures, if adopted in the exercise of the police power, shall be reasonable and appropriate to the purpose, or if constituting a taking of private property shall provide for due compensation, which may include the limitation or remission of taxes.” Article 5-K is broader in scope, covering historic preservation not only by regulation but by governmental acquisition as well. Section 119-bb (4) defines "historic preservation” to mean "for the purposes of this article and notwithstanding any other provision of law, the study, designation, protection, restoration, rehabilitation and use of buildings, structures, districts, areas, sites or objects significant in the history, architecture, archeology or culture of this state, its communities, or the nation.” The operative provisions of the article are contained in section 119-dd, which is set forth in full in the margin.[5]
*119 Of importance to the present issue is the fact that the regulation, special condition or restriction by which section 119-dd (1) authorizes control of private property is "for the protection, enhancement, perpetuation and use of places, districts, sites, buildings, structures”. Nothing in the subdivision speaks to regulation of ownership. Noteworthy also is the fact that though section 119-bb (4) refers to "restoration” and "rehabilitation”, those words are not to be found in section 119-dd (1), presumably because it was intended to permit a municipality acting under section 119-dd (3) after acquisition of a fee or lesser interest to restore and rehabilitate historic buildings and sites, but not to permit the municipality to impose an obligation to restore or rehabilitate such buildings or sites as remain in private ownership. Here the Code sections creating the Alansten Landmarks Preservation District not only mandate that the entire 22-acre district remain in single ownership but also impose upon the developer the duty of rehabilitating the exteriors of the Jay Mansion and the Carriage House, proscribe the use of any new dwelling unit until that has been done, thus effectively requiring that the cost of rehabilitation be shared by owners in the district of units other than the Jay Mansion and the Carriage House, and by dictating condominium ownership of the entire district impose the cost of maintenance of the exteriors of the Mansion and the Carriage House upon owners of such units as well.
The right to impose reasonable controls on the use and appearance of neighboring private property within public view, given by General Municipal Law §§ 96-a and 119-dd (1), cannot be stretched to cover payment of restoration and maintenance costs, for such a construction, which would impose those costs upon every unit in the district, not just those "within public view,” would render meaningless the limitation intended by those words which appear in both sections. Yet there is no question that such was the Council’s intention, for its findings with respect to the final environmental impact statement flatly stated that "[o]nly under [condominium] ownership can the cost of maintaining the exteriors of the historic buildings be shared by all the homeowners”, and that theme is repeatedly emphasized in the City’s brief to this court. *120 While that may be true, clearer authorization to enact such provisions than are contained in the General Municipal Law sections referred to is essential before section 197-13.2 can be upheld against the argument that it was beyond the City’s power to enact.
Noteworthy also, in view of the requirement that the Mansion and Carriage House be completely restored before any other unit can be occupied is the absence from the General Municipal Law sections of authority to require restoration, as distinct from maintenance. Landmark and historic preservation laws normally prevent alteration or demolition of existing structures unless the owner can demonstrate hardship (Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 330, affd 438 US 104), but if they place an undue and uncompensated burden on the individual owner may be held unconstitutional (Lutheran Church in Am. v City of New York, 35 NY2d 121, 129) because "it forces the owner to assume the cost of providing a benefit to the public without recoupment” (French Investing Co. v City of New York, 39 NY2d 587, 596; see, Dunham, A Legal and Economic Basis For City Planning, 58 Colum L Rev 650, 665). Here, society at large bears no part of the cost of restoration, it is rather to be borne initially by plaintiff and ultimately by the purchasers of dwelling units within the district. Yet the City’s expert appraiser agreed that restoration costs of approximately $627,000 for the Jay Mansion and $588,000 for the Carriage House would be required.
We do not hold that the General Municipal Law sections could not be drafted to impose restoration costs on an owner without violating the Constitution, nor need we reach the question whether as applied to plaintiff’s property section 197-13.2 is constitutional. We hold rather that in light of the well-recognized rule that statutes are to be construed so as to avoid constitutional issues if such a construction is fairly possible (Matter of Peters v New York City Hous. Auth., 307 NY 519, 527-528; see, People v Felix, 58 NY2d 156, 161; McKinney’s Cons Laws of NY, Book 1, Statutes § 150), the General Municipal Law sections under consideration as presently written should be construed not to authorize imposition of restoration costs solely upon plaintiff and purchasers from plaintiff or maintenance costs upon purchasers of properties other than those to be preserved.
C
In view of the distinctions between zoning regulation, historic district regulation and landmark regulation recognized in Penn *121 Cent. Transp. Co. v City of New York (42 NY2d, at p 330, supra), we note that chapter 117 of the Rye City Code deals with landmarks preservation and is referred to in section 197-13.2 (C) (1). As chapter 117 read when the Alansten Preservation District section was enacted, landmark designation required the property owner’s consent, but effective December 7, 1983, chapter 117 was amended to remove the consent requirement and provide for landmark designation by the City Council alone,[6] and effective July 18,1984, the Alansten 22-acre site and the exteriors of the Jay Mansion and of the Carriage House were designated as protected. Nothing in that designation or in the provisions of chapter 117, which concern only maintenance of a landmark and the circumstances under which it can be demolished, provides support for the provisions of section 197-13.2 requiring that the Alansten property be held in single ownership in condominium form or the imposition of restoration, as distinct from maintenance, costs upon the property owner and ultimately upon purchasers of dwelling units within the district.
For the foregoing reasons, the order of the Appellate Division declaring Rye City Code § 197-13.2 invalid is affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Simons, Kaye, Alexander and Titone concur.
Order affirmed, with costs.

. Title has apparently been transferred back to the predecessor by plaintiif, but the fact that there has been no substitution of parties does not moot the appeal (Pacific Blvd. Assoc. v City of Long Beach, 38 NY2d 766).

. Subdivision 25 authorizes regulation and restriction of trades and industries and, therefore, is not a source of power for the local law under consideration. In any event, it provides no greater support for Local Law No. 5 than subdivision 24, for it authorizes no more than control of where "buildings, designed for specific uses” may be located and of "the uses for which buildings may not be erected or altered.”

. City of Miami Beach v Arlen King Cole Condominium Assn. (302 S2d 777 [Fla], cert denied 308 S2d 118); CHR Gen. v City of Newton (387 Mass 351, 439 NE2d 788); Bridge Park Co. v Borough of Highland Park (113 NJ Super 219, 273 A2d 397); Graham Ct. Assoc. v Town Council (53 NC App 543, 281 SE2d 418); see, McHenry State Bank v City of McHenry (113 Ill App 3d 82, 446 NE2d 521); Maplewood Vil. Tenants Assn. v Maplewood Vil. (116 NJ Super 372, 282 A2d 428); but see, Goldman v Town of Dennis (375 Mass 197, 375 NE2d 1212); Griffin Dev. Co. v City of Oxnard (39 Cal 3d 256, 703 P2d 339 [1985]). The general proposition is, however, also recognized in noncondominium cases (Vlahos Realty Co. v Little Boar’s Head Dist., 101 NH 460, 146 A2d 257; County of Fayette v Cossell, 60 Pa Commw 202, 430 A2d 1226; Fernald’s Appeal, 17 Pa D&C 2d 291; Olevson v Zoning Bd., 71 RI 303, 44 A2d 720).

. The cluster provisions of the Town Law (§ 281) and the Village Law (§ 7-738) are somewhat more detailed, but even if read in pari materia (see, Delaware Midland Corp. v Incorporated Vil. of Westhampton Beach, 39 NY2d 1029, affg on opn at Special Term 79 Misc 2d 438), the City’s authority is not enhanced, for both speak to the "development of land in such a manner as to promote the most appropriate use of land’ ’.

. The section, entitled "Local historic preservation programs,” reads as follows:
"In addition to existing powers and authorities for local historic preservation programs including existing powers and authorities to regulate by planning or zoning laws and regulations or by local laws and regulations for preservation of historic landmarks and districts and use of techniques including transfer of development rights, the legislative body of any county, city, town or village is hereby empowered to:
"1. Provide by regulations, special conditions and restrictions for the protection, enhancement, perpetuation and use of places, districts, sites, buildings, structures, works of art and other objects having a special character or special historical, cultural or aesthetic interest or value. Such regulations, special conditions and restrictions may include appropriate and reasonable control of the use or appearance of neighboring private property within the public view, or both.
"2. Establish a landmark or historical preservation board of commission with such powers as are necessary to carry out all or any of the authority possessed by the municipality for a historic preservation program, as the local legislative body deems appropriate.
"3. After due notice and public hearing, by purchase, gift, grant, bequest, devise, lease or otherwise, acquire the fee or any lesser interest, development right, easement, covenant or other contractual right necessary to achieve the purposes of this article, to historical or cultural property within its jurisdiction. After acquisition of any such interest pursuant to this subdivision, the effect of the acquisition on the valuation placed on any remaining private interest in such property for purposes of real estate taxation shall be taken into account.
"4. Designate, purchase, restore, operate, lease and sell historic buildings or structures. Sales of such buildings and structures shall be upon such terms and conditions as the local legislative body deems appropriate to insure the mainte-
*119 nonce of the historic quality of the buildings and structures, after public notice is appropriately given at least thirty days prior to the anticipated date of availability and shall be for fair and adequate consideration of such buildings and structures which in no event shall be less than the expenses incurred by the municipality with respect to such buildings and structures for acquisition, restoration, improvement and interest charges.
"5. Provide for transfer of development rights for purposes consistent with the purposes of this article.”

. On June 18,1984, the Alansten 22-acre plot was so designated. The constitutionality of the amended version of the chapter is awaiting trial before Supreme Court, Westchester County, in a declaratory judgment action entitled DGM Partners-Rye v City of Rye.