OPINION OF THE COURT
Donald N. Silverman, J.
The instant CPLR article 78 special proceeding is in the nature of mandamus to review. The central issue involves interpretation of nonconforming use, specifically the effect of a change not in the ownership of the subject property, but in the continued nonconforming use by a nonowner. As pre *79 sented, the matter appears to be one of first impression, neither side having been able to provide a case on point.[1]
Petitioner, Nicholas Iazzetti (hereinafter Nicholas), is the father of petitioner, Ronald Iazzetti (hereinafter Ronald). Nicholas is the owner of real property designated as section 105, lot 1, blocks 34 and 38 on the local tax map. He has owned the property since 1950. Ronald is the owner of real property designated as section 105, lot 1, block 24 on the tax map and has resided there since 1961. Both properties front on Acoma Road, however, they are not contiguous.
Since 1950, several pieces of landscaping and excavation equipment have been stored on Nicholas’ property. Although specific pieces of equipment have changed through wear and replacement, the type and quantity of equipment has remained relatively the same.
The storage of this equipment became a nonconforming use when the zoning ordinance for the Village of Tuxedo Park came into effect in 1954. Under article V (Nonconforming Buildings and Uses), section 100-24 provides for the continuation, repair, alteration, cessation or restoration of such buildings or uses.
Since 1950 the equipment was owned and utilized by Nicholas as part of a business he owned and operated. In the late 1960’s, or early 1970’s, Nicholas ceased to actively participate in the business. Instead the operations were assumed by Ronald and his son Thomas Iazzetti (hereinafter Thomas). At some point, in 1981 or 1982, the business underwent incorporation and all shares were issued to Thomas. Nicholas does not participate in the business other than to permit the continued storage of the equipment on his property.
Both Nicholas and Ronald received identical notices of violation of the local zoning ordinance on or about July 21, 1988 from the building inspector.[2] An appeal was taken to the *80 Board of Zoning Appeals (hereinafter the Board) and a public hearing was held on September 28, 1988.
In a written decision dated December 13, 1988 the decision of the building inspector was affirmed. Specifically, the Board found there had been a change in use of Nicholas’ property, by virtue of his lack of participation in the business (of landscaping and excavation). This change was held to end the current use of such property for storage because it had become storage of property owned by others, i.e., Thomas. In its decision respondent has specifically quoted section 100-24 (C), (D) and (E)[3] of the zoning ordinance.
At issue is whether the Zoning Board of Appeals’ decision lacks a rational basis. In other words, is there a rational basis for holding that a nonconforming use has undergone a change and is therefore terminated because the persons availing themselves of the use do not own the property where the use is located.
A nonconforming use of land is one which has existed prior to the enactment of a zoning ordinance and is continued although not in compliance with the restrictions of the ordinance (1 Anderson, New York Zoning Law and Practice § 6.02 [3d ed 1984] [hereinafter Anderson]). General policy considerations pertaining to nonconforming uses favor eventual elimination (see, Matter of Harbison v City of Buffalo, 4 NY2d 553 [1958]; see also, 1 Anderson, op. cit, § 6.50 et seq.). In counterpoint to this is the recognition of the property rights of owners: "a zoning ordinance cannot prohibit an existing use to which the property has been devoted at the time of the enactment of the ordinance” (Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d 278, 284 [1980]). Moreover, regarding interpretation of local ordinances, "[z]oning laws are to be *81 given strict construction because they are in derogation of common-law rights” (FGL&L Prop. Corp. v City of Rye, 66 NY2d 111, 115 [1985]).
The cornerstone case in this area is People v Miller (304 NY 105, 109 [1952]) which stands for the proposition that, "existing nonconforming uses will be permitted to continue, despite the enactment of a prohibitory zoning ordinance, if, and only if, enforcement of the ordinance would, by rendering valueless substantial improvements or businesses built up over the years, cause serious financial harm to the property owner.” Such improvements to property or business are characterized as vested rights (People v Miller, supra, at 109). In contrast, however, see Matter of Chrysler Props. v Morris (23 NY2d 515, 518 [1969]) which cautions against the "fiction” of vested rights relied on by Miller. Chrysler Props, sets forth the following considerations: fairness; reliance on preexisting law; extent of retroactivity; and nature of the public interest to be served by the law (supra, 23 NY2d, at 518).
Also to be considered is, "a fundamental principle of zoning that a zoning board is charged with the regulation of land use and not with the person who owns or occupies it” (Matter of Dexter v Town Bd., 36 NY2d 102, 105 [1975]; FGL&L Prop. Corp. v City of Rye, supra, at 116; see also, Matter of St. Onge v Donovan, 71 NY2d 507, 515, 517 [1988]).
Here, Nicholas purchased the property and began to use a portion of that property for the storage of landscaping and excavation equipment. This included trucks, trailers, a backhoe, and other items numbering, in total, approximately 10. The equipment is stored to the rear of the house and is shielded from sight, in part, by a high stone and masonry wall. In addition to the wall there is a stone and masonry storage shed.[4] Nearby is a second shed of pole and sheet metal construction which received a certificate of occupancy from the building inspector in January 1981. The area used for storage has remained unchanged in its location and approximate space. Moreover, the quantity of equipment has also remained stable since 1950, a period of 38 years.
Considering 1970 as the measuring date for Nicholas’ lack of involvement, and thereby the grounds for termination, the existing use was unchallenged for approximately 18 years.
The nature of the change is also at odds with traditional *82 analysis which typically considers changes in volume of use, location of use, or, change to a more restrictive use (see, 1 Anderson, op. cit., § 6.23 et seq.). Even a change in ownership of a nonconforming business or use does not change the right to continue the use (1 Anderson, op. cit., § 6.26). Change in use that would justify termination relates directly to the use itself. It is the use which must change, not the ownership of the use.
The Board in making its decision has focused on the change in utilization of the use to the exclusion of any other considerations. Yet, the use has not changed, instead, it is the individual availing himself of that use who has changed. This is not in accord with the fundamental principle that zoning is the regulation of land, not of individuals. The Board can no more invalidate a nonconforming use based upon the personal relationship of the landowner to that use, than it can condition zoning changes on the person who owns or occupies the land (Matter of Dexter v Town Bd., supra, at 104, 105).
Regarding Miller (supra) and the concept of vested rights, Miller arose less than five years after enactment of the zoning ordinance therein and involved a use (keeping pigeons as a hobby) held to be insubstantial at the time of enactment. Here the use involved is an ongoing activity of substance involving an established family business and improvements of value in the form of the wall and two storage buildings. Moreover, considerations of fairness (see, Matter of Chrysler Props. v Morris, supra) strongly favor protection of Nicholas’ right to use his property in conformity with its past use.
Respondent’s decision is arbitrary and capricious for the following reasons. First, the change in use relied on does not find support in the local zoning ordinance. None of the sections cited are directly applicable to the instant facts. The Board’s interpretation of its own ordinance must have a rational basis (FGL&L Prop. Corp. v City of Rye, supra; see also, Matter of Cowan v Kern, 41 NY2d 591, 599 [1977]). Second, the use which the Board seeks to restrict has not changed. It is the same use which was commenced in 1950. To invalidate this use, 38 years from inception, and approximately 18 years after the specific action complained of, ignores considerations of fundamental fairness to petitioner and his reliance on existing law. Third, the Board cannot implicitly condition a nonconforming use on the personal involvement of the owner, and then vitiate that use based on what the Board defines as lack of personal involvement. Finally, it *83 should be noted that it is the use and its location which affects the public interest. The person utilizing the property, be it the owner, or in this case his son and grandson, has little to do with the public interest involved.
Accordingly, this court concludes that respondent’s decision of September 12, 1988 is arbitrary and capricious, and is hereby annulled and vacated, and respondent is directed to withdraw charges of zoning violations against petitioners where such charges stem from the instant allegations of invalid nonconforming use of property at section 105, lot 1, blocks 34 and 38 now owned by Nicholas Iazzetti.
Ronald’s notice of violation addressed his practice of parking two pickup trucks in his driveway (at block 24). Both vehicles are used for landscape work. One of them is personally registered to Ronald and the other to the corporation. Ronald had sought a variance to allow him to continue to park a second pickup truck on the property (one pickup truck is within zoning). This practice was held to be a violation by the building inspector and was similarly treated by the Board which stated: "there has been no testimony or evidence presented to this Board to support a variance to park a commercial vehicle in the driveway.”
This conclusory language fails to address the elements normally required to establish practical difficulty or unnecessary hardship as required by the local zoning ordinance (§ 100-48 [B]; see also, Matter of Wachsberger v Michalis, 19 Misc 2d 909, 912 [Nassau County 1959]; Human Dev. Servs. v Zoning Bd. of Appeals, 110 AD2d 135, 139 [2d Dept 1985]). Accordingly, this portion of the instant proceeding is remanded for a further hearing solely on Ronald’s application for a variance to park a second pickup truck in his driveway (at block 24).

. Respondent has cited Incorporated Vil. of Old Westbury v Alljay Farms (64 NY2d 798 [1985], modfg 100 AD2d 574 [2d Dept 1984]) as dispositive. It is distinguishable from the instant case, however, because the use eventually denied therein (raising of horses for others) was found to be an expansion of a preexisting use.

. Section 100-7: creating offensive noise, odors and creating a hazard to public health and safety.
Section 100-15: more than the legal number of vehicles parked on your property.
Section 100-41: no certificate of occupancy has been issued for the current use.

. Section 100-24:
"The lawful use of any building or land existing at the time of the enactment of this local law may be continued subject to the following regulations, although such use does not conform to the provisions of this local law. * * *
"C. Extensions. A nonconforming use shall not be extended nor increased in intensity nor shall it be changed to another nonconforming use. The extension of a lawful use to any portion of a nonconforming building shall not be deemed an extension of such nonconforming use.
"D. Changes. No nonconforming use, if once changed to a permitted use, shall be changed back to a nonconforming use.
"E. Cessation. Any nonconforming use which shall have ceased for any reason for a period exceeding twelve (12) months shall terminate and shall not be resumed, nor shall it be replaced by another nonconforming use”.

. Both of these structures have no dates of construction attributed to them and are not challenged by the instant notice of violation.