# P.O.K. RSA, INC., Appellant, v VILLAGE OF NEW PALTZ, Respondent.

Third Department, April 26, 1990

APPEARANCES OF COUNSEL

*Hankin, Hanig, Stall & Caplicki (Joel D. Hanig* of counsel), for appellant.

*J. Philip Zand* for respondent.

OPINION OF THE COURT

YESAWICH, JR., J.

Plaintiff owns a residential apartment complex of eight buildings, containing approximately 146 apartments, located within defendant, the Village of New Paltz (hereinafter the Village) in Ulster County. From 1963 to 1969 certificates of

occupancy were issued to the prior owner of the complex. Additional certificates of occupancy were issued in 1986, 1987 and 1988 after, *inter alia,* decks were rebuilt and the boiler replaced.

After it purchased the complex in 1986, plaintiff sought approval from the Attorney-General to convert the apartments into condominiums. In 1988, the Village adopted Local Law No. 21, which modified the Village's municipal code to prohibit the conversion of multiple dwelling buildings into condominiums or cooperatives until the building inspector determined that the structure complied with the current New York Building Construction Code, all applicable building laws, rules and regulations, and issued a new certificate of occupancy authorizing the change.

Assertedly, the Village enacted this local law because it determined that sponsors converting apartment complexes into condominiums and cooperatives had no intention of correcting existing disrepair and building code violations prior to selling the units. Concluding that potential buyers needed special protection from unknowingly purchasing deficient housing, the Village enacted the certificate of occupancy "renewal" requirement.

Plaintiff initiated this declaratory judgment action challenging the local law's validity on various grounds, the following three, which represent the first three causes of action respectively in the complaint, underlie this appeal: (1) that it is not within the Village's zoning legislative power to adopt a law that regulates a change in property ownership rather than property use, (2) that the subject matter of Local Law No. 21 has been preempted by State law, and (3) that the local law conflicts with controlling State law. The Village moved to dismiss the complaint or, in the alternative, plaintiff's first and second causes of action; plaintiff cross-moved for summary judgment declaring the local law invalid.

Supreme Court dismissed plaintiff's first two causes of action, but found that factual issues precluding an award of summary judgment existed with respect to the third and fourth causes of action, the latter being directed at the procedures utilized in adopting the local law. On appeal, plaintiff urges that the court's refusal to grant it summary judgment on its first three causes of action was error.

Municipalities are empowered to exercise that law-making authority which the State delegates to them *(see, Albany Area*

*Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 376). And except as limited by the State Constitution or any general law, municipalities may enact local laws to protect the safety, health and well-being of persons and property within their jurisdiction *(see,* NY Const, art IX, § 2 [c]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]; Village Law § 4-412 [1]). The Village's ability to enact Local Law No. 21 turns then on whether the subject matter it addresses has been preempted by State law, whether the local law is inconsistent with controlling State law and whether it exceeds the Village's power to regulate its inhabitants' property.

 The preemption argument, advanced in plaintiff's second cause of action, namely, that the State intended to arrogate to itself the task of regulating condominium conversions and conferred oversight responsibility therefor on the Attorney-General via General Business Law article 23-A, lacks substance. The Court of Appeals has already indicated that the Attorney-General has no power to require cooperative or condominium sponsors to repair or eliminate building code violations as a precondition to selling the property *(see, Council for Owner Occupied Hous. v Abrams,* 72 NY2d 553, 558). Furthermore, the preemption argument runs afoul of the Executive Law, for this law specifically enables municipalities to enact: "any building regulations relating to any matter *as to which the uniform fire prevention and building code does not provide,* but no municipality shall have the power to supersede, void, repeal or make more or less restrictive any provisions of this article or of rules or regulations made pursuant hereto" (Executive Law § 379 [3]; emphasis supplied). The Uniform Fire Prevention and Building Code Act does not explicitly address certificates of occupancy *(see,* Executive Law §§ 370-383). Moreover, the Multiple Residence Law, which speaks to certificates of occupancy *(see,* Multiple Residence Law § 302), expressly permits municipalities to enact more restrictive local laws (Multiple Residence Law § 329 [1]).

 Also unavailing is the third cause of action, which has as its predicate that the Village did not have the power to enact Local Law No. 21 because it contravenes State law, to wit, Multiple Dwelling Law § 301 (5), Multiple Residence Law § 302 (5) and Executive Law former § 383. Undeniably, the Village cannot establish local laws which conflict with the State Constitution or "any general law", defined as laws which apply alike to all villages (NY Const, art IX, § 2 [c]; § 3 [d] [1]; Municipal Home Rule Law § 10 [1] [ii] [a] [12]). The

local law at issue, however, is not inconsistent with any of these three statutes.

The Multiple Dwelling Law and Multiple Residence Law adverted to provide in sum that when an individual purchasing a multiple dwelling relies on a previously issued certificate of occupancy, no subsequent claim can be advanced that the building did not conform to the provisions of the respective chapters of those laws prior to the issuance of the certificate (see, Multiple Dwelling Law § 301 [5]; Multiple Residence Law § 302 [5]). These sections foreclose charges that the dwelling was not in compliance with those laws when the certificates were issued; Local Law No. 21 does not suggest the contrary.

Nor does the local law contradict Executive Law former § 383. That statute assures that: "Every * * * certificate of occupancy shall, unless and until set aside or vacated by the board of review or a court of competent jurisdiction, be and remain binding and conclusive upon all state and municipal agencies, *as to all matters therein set forth* and no order, direction or requirement at variance therewith shall be made or issued by any other state, or municipal agency" (Executive Law former § 383 [d], repealed by L 1981, ch 707, § 12; emphasis supplied). The certificates of occupancy issued in connection with plaintiff's apartment complex from 1963 to 1969* proclaim that the buildings "conform[ed] to all of the requirements of the applicable provisions of the law" existing as of the date of issuance (see, 4 Rathkopf, Zoning and Planning § 49.07, at 49-41). Local Law No. 21 does not detract from that assurance, for it requires the building inspector to determine if the structure meets current building construction laws. Although the already-promulgated certificates attest that the complex met building code regulations extant at the time they were issued, there is no guarantee that they meet today's standards (see, .id., at 49-38). For example, the New York State Building Code Law was repealed effective January 1, 1984, and replaced by the current New York State Uniform Fire Prevention and Building Code Act, which became effective July 21, 1981 (L 1981, ch 707, §§ 12, 20). Local Law No. 21's requirement that plaintiff's buildings now meet current building and fire regulations does not offend the Executive Law former § 383 guarantee.

---

* The certificates of occupancy issued to plaintiff in 1986, 1987 and 1988 are irrelevant for the purposes of this argument for the applicable Executive Law provision was repealed effective in 1984 (L 1981, ch 707, §§ 12, 20).

■ There is, however, merit to the complaint insofar as the first cause of action is concerned, for as plaintiff rightly suggests, the Village does not have the legislative power to regulate the conversion of property ownership which does not involve an alteration in the owner's use of the property. Municipalities have no inherent capacity to mandate the manner in which property may be owned or held *(FGL & L Prop. Corp. v City of Rye,* 66 NY2d 111, 113). They must acquire such power from the State. Absent such a delegation of power, a municipality cannot employ a zoning ordinance to exclude or discriminate against the condominium form of ownership *(North Fork Motel v Grigonis,* 93 AD2d 883). As Local Law No. 21 encumbers sponsors' efforts to convert apartments, which the Village zoning ordinance classifies as multifamily dwellings, into condominiums, also considered multifamily dwellings, it goes beyond the Village's enabling authorization and therefore the local law is ultra vires and void *(see, FGL & L Prop. Corp. v City of Rye, supra,* at 115; *North Fork Motel v Grigonis, supra).*

KANE, J. (concurring in part and dissenting in part). In respectfully dissenting, I note my concurrence with the majority's reasoning as to the merits of plaintiff's second and third causes of action. In my view, however, the ordinance is a legitimate exercise of the Village's police power and I would, therefore, affirm Supreme Court's dismissal of plaintiff's first and second causes of action. "To be sure, a Village ordinance enacted under the police power must bear a reasonable connection to the public health, comfort, safety and welfare" *(D'Angelo v Cole,* 67 NY2d 65, 69; *see,* Village Law § 4-412 [1]). I agree with the majority that, absent a delegation of power, a village may not mandate the manner in which property may be owned *(see, FGL & L Prop. Corp. v City of Rye,* 66 NY2d 111, 113). However, the clear legislative target of the ordinance at issue here is the *condition* of the property at the time of conversion, not its form of ownership. The encumbrance directed at conversion is, in my view, incidental; a temporary prohibition aimed at protecting the safety of future inhabitants *(see, Loventhal v City of Mount Vernon,* 51 AD2d 732). Inasmuch as the ordinance furthers the "legitimate code enforcement goals of the village" *(Sokolov v Village of Freeport,* 52 NY2d 341, 348) without impermissibly infringing on any conceivable constitutional right *(see, supra),* the validity of the ordinance in view of the challenge forwarded by plaintiff's first cause of action should also be affirmed.

MAHONEY, P. J., and MERCURE, J., concur with YESAWICH, JR., J.; KANE, J., concurs in part and dissents in part in an opinion.

Order modified, on the law, without costs, by reversing so much thereof as denied plaintiff's motion for summary judgment; plaintiff granted summary judgment on its first cause of action and defendant's Local Law No. 21 declared ultra vires and void; and, as so modified, affirmed.