OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The Triphammer Development Company, Inc. (hereafter, the Company) seeks a judgment, pursuant to CPLR article 78, that the Village of Lansing unlawfully refused to issue a building permit allowing the Company to renovate space within its existing shopping mall. The petition contends that section 504.01 of the village zoning law is (a) void, as beyond the delegated zoning powers of the municipality under State law, (b) unconstitutional on its face, and (c) arbitrary and capricious.
FACTS
The denial of the building permit application was premised upon section 504.01 of the village zoning law. As amended in December 1991 and March 1992, the law refuses building permits to any property owner who has not fully paid defined fees, debts and charges relating to the property involved in the application.
Where a debt is deemed unpaid, the zoning officer must withhold the application, regardless of the fact that the debt is disputed by the property owner and, as here, may be the subject of pending litigation. In all such cases, the zoning official must notify the village Board of Trustees which, in turn, must then afford the applicant a prompt hearing, if desired. In any event, the Board is required to review the matter on its own motion.
The Board, after review, may grant the application, as a matter of grace, or confirm the denial. However, should the Board conclude that the debt or charge is not owed, or upon the filing of a bond or letter of credit by the applicant which secures payment, the law requires the Board to grant the application.
*371 This petition is companion to a motion brought by the Company to dismiss a village contractual claim arising from an unrelated business transaction between the parties. The court has denied that motion in a separate decision issued concurrently with this determination. Thus, the village claim against the Company retains its vitality. Therefore, the unpaid claim remains an impediment, under section 504.01, to the Company’s ability to obtain building permits for any of the tenant renovations within the shopping mall which are needed from time to time.
The history of the contractual controversy between the Company and the village which led to the village claim and, hence, to the denial of the permit, is more fully set forth in the opinion of the court which decides the companion summary judgment motion. Here, it suffices to note that, in July 1991, the village sued the company for damages in the sum of $55,600 which, the village contends, represents the Company’s agreed share of construction costs incurred by the village to improve both Triphammer Road and connecting roadways located on the Company’s private property. The Company answered the complaint in October 1991.
In December 1991, the village amended its zoning law to bar building permits to owners against whom any unpaid village claim had been asserted "in connection with the improvement, development or maintenance of the subject property”. In February 1992, the Company brought an article 78 proceeding to challenge the denial of a building permit for the renovation of certain spaces at the mall. That denial, of course, was based upon the pending village claim for reimbursement of construction costs. The dispute was resolved and the special proceeding was dismissed as moot. In March 1992, a new application was submitted and denied by the village for other renovations at the mall. The current petition for article 78 review swiftly follows.
This chronology strongly suggests that the zoning law amendments adopted by the village in December 1991 and March 1992 were related to the controversy with the Company and the village’s pending contractual litigation. The Company’s petition, at paragraphs 7 and 8, alleges a very direct connection.
PRELIMINARY ISSUES
The village argues, initially, that the Company cannot *372 proceed with its petition, having failed to exhaust administrative remedies provided under the local zoning law which, as described above, permits the Board to grant the permit in a variety of special circumstances. Moreover, the village points to its Board of Zoning Appeals which has the power to modify the application of any of the provisions of the zoning law where practical difficulties or unnecessary hardships are encountered.
It is the Company’s position, however, that neither the village Board nor any village agency has any lawful authority to hear or determine an appeal under section 504.01 of the village zoning law. That position is based upon the Company’s contention that the village lacks any power to condition the issuance of a building permit upon prior payment of a claim which is unrelated to accepted zoning factors and criteria affecting the use of such property. In that context, the Company is aggrieved regardless of the outcome of any future administrative hearing.
If the Company’s conclusions are correct, the petitioner should not be compelled to seek administrative relief from a determination which is void, ab initia. In such a case the court is not called upon to assess the legislative or administrative discretion or judgment of the village Board or any village official. Accordingly, no exhaustion of administrative remedies is necessary in order to reach the underlying legal issues (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57).
In any event, the court is belatedly advised that the Company changed its position and pursued its right under section 504.01 to make a presentation to the village Board. In a resolution of April 21, 1992, the Board refused to issue the permits except upon the furnishing of a bond or letter of credit to secure payment of the $55,600.67 claim or upon payment of $25,000, both without prejudice to the pending action at law against the Company.
One other threshold matter requires discussion. Assuming that the constitutional claims presented by the petitioner must be resolved, article 78 is not an appropriate vehicle (Matter of R & G Outfitters v Bouchard, 101 AD2d 642; Matter of Top Tile Bldg. Supply Corp. v New York State Tax Commn., 94 AD2d 885) and the court would be obliged to convert the proceeding to a declaratory judgment action pursuant to CPLR 103 (c). However, the court acknowledges the doctrine that constitutional issues should not be addressed in *373 the presence of other adequate grounds of decision. (FGL & L Prop. Corp. v City of Rye, 66 NY2d 111, 120.) Here, the issues may be met and resolved on statutory grounds and no conversion is necessary.
THE MERITS
Local governments are the agencies and instrumentalities of the State of New York. As creatures of the State, municipalities enjoy no inherent right to zone property and must exercise such powers within the bounds specifically or impliedly set by State law (Matter of Golden v Planning Bd., 30 NY2d 359, 370).
In the case of villages, the basic delegation of zoning powers, and the concomitant limitations upon such powers, are found at section 7-700 of the Village Law (Kurzius v Incorporated Vil. of Upper Brookville, 51 NY2d 338, 343). Section 7-700, among other things, empowers village boards to regulate the height and size of buildings, the relationship between structures and open spaces, densities of population, the location and use of buildings and lands for trade, industry, residential and other purposes. Section 7-704 provides similarly specific powers regarding the safety of streets, the provision of adequate transportation, water, sewage, and schools, parks and other public services and requirements.
While these delegations of responsibility are carefully defined, both sections of the Village Law include more general language regarding the promotion of public health, safety, morals and the general welfare. All of these values are proclaimed, in broad terms, as purposes of the zoning powers. However, the Court of Appeals has often cautioned that statutory invocations of the "general welfare” must not be allowed to obscure the limitations which the Legislature has imposed upon the devolution of specific powers (see, for example, Matter of Golden v Planning Bd., supra; FGL & L Prop. Corp. v City of Rye, supra).
The opinion in De Sena v Guide (24 AD2d 165, 170-171) summarized this jurisprudence as follows: "though general welfare, as a term of art, may be synonymous with the police power * * * the police power to promote general welfare is not plenary * * * nor, indeed, can the municipal exercise of zoning power venture beyond the limits of its grant from the Legislature * * * In short, the zoning ordinance must * * * fit within the statutory delegation of power * * * There is no *374 transcendental or magical effect from the use of term ’general welfare’ in justifying the adoption of the ordinance.”
Given that background, we first turn to an analysis of the action of the village and then to an examination of section 504.01 of the local zoning law in relation to the zoning powers delegated to local governments under the Village Law and other State Legislation.
I
The renovation work specified by the Company in the building permit application involved no change of use, no alteration of the size, shape or exterior appearance of the building and would have had no effect upon population density, trafile flow or other environmental factors. The refusal to issue the permit was not based upon any asserted deviation of the proposed work from any zoning criteria normally associated with the manner or method of putting land and buildings to productive use in a commercial zone. There is no contention that the shopping mall would fail, in any respect, to comply with any aspect of the local zoning law if the permit were granted. In fact, the Board resolution of April 21, 1992 conceded the "only non-Code-related, generally cosmetic work remains as the subject of the * * * permit application”.
The court finds that the denial of the permit was motivated by the desire of the village to obtain prompt payment of its now hoary contract claim against the Company arising out of a transaction which took form five years ago. The debt has no connection with the present or proposed use of the property or with any of the zoning functions delegated to the village in section 7-700 or 7-704 of the Village Law, including the promotion of the "general welfare”. It has everything to do with charges and countercharges regarding the nature of promises made in 1987, and thereafter, regarding paving, painting and curbing a public street and adjoining private driveways.
Concededly, the absence of express powers in the Village Law to justify the denial of the permit does not exclude the possible existence of implied powers to accomplish that purpose where independent justification can be shown within the spirit of the enabling legislation. Here, however, the "spirit” of the Village Law is hostile to the concept of zoning powers directed at owners rather than land uses. In De Sena v Guide (supra, at 171), the court stated: "The zoning power * * * *375 must operate in relation to the use of land and not for the accomplishment of purposes extraneous to that relation” (see also, FGL & L Prop. Corp. v City of Rye, supra, at 116). On somewhat similar facts, the Attorney-General advised a municipality that it was not authorized to condition the grant of a special permit upon the applicant’s agreement to make certain payments which, even though related to the permit, did not affect the proposed use of the building (1984 Atty Gen [Inf Opns] 80).
II
The village contends, however, that the power to deny the permit derives not only from the Village Law but also from the Municipal Home Rule Law and the Statute of Local Governments. Section 10 (6) of the Statute of Local Governments delegates to villages the power to adopt and amend zoning regulations. Municipal Home Rule Law § 10 (1) (ii) permits villages to exercise the power granted by the Statute of Local Governments.
Both statutes make it clear that the authority granted extends only to local legislation which is not inconsistent with the NY Constitution or the general laws of the State which, of course, includes the Village Law. However, the Municipal Home Rule Law provides a limited exception to that rule where a municipality elects to invoke a power of supersession. That power, in the case of villages, is found at section 10 (1) (ii) (e) (3) of the Municipal Home Rule Law. Here, no such election was pursued.
We conclude that section 504.01 of the local law, to the extent that it requires the denial of permits based on an extraneous quarrel with an applicant, is inconsistent with a general State law because it invokes powers not delegated by section 7-700 or 7-704 of the Village Law.
The mere omission of a power to deny a permit in the State enabling statute would not always support the conclusion that an inconsistency exists between the silence of the State law and the assertion of such a power in a local law. Here, however, the omission in the Village Law is meaningful.
The opinion of the Court of Appeals in Kamhi v Town of Yorktown (74 NY2d 423, 429) is instructive. There, section *376 274-a of the Town Law omitted any delegation of authority which would have permitted the municipality to require a developer to contribute parklands, or a money equivalent, as a condition to the issuance of site-plan approvals. The high court held that the omission of the power to exact such contributions in the State statute was inconsistent with a local law which affirmatively imposed just such a requirement.
That conclusion was buttressed by the fact that power to compel the contribution was granted, under Town Law § 277, in regard to subdivision plat approvals, but was omitted at section 274-a of the Town Law which dealt with individual site plans. In that situation, the court reasoned, the inclusion of the exaction power in one section of the statute, and its omission in another, reflected a conscious legislative judgment.
Accordingly, the court held that the assertion of the power in the local law was inconsistent with the omission in the State law. Here, a similar incongruity exists. The State enabling statute omits any express power to deny a permit based on unrelated debts and a host of judicial decisions deprecate the notion that implied powers are available to accomplish that purpose.
We conclude, therefore, that the Village Law contains no express or implied grant of power to impose zoning conditions which are based upon extraneous disputes with owners of property, and that the imposition of such conditions by section 504.01 is inconsistent with the scheme of general State law. The village did not invoke its power of supersession and did not comply with section 22 (1) of the Municipal Home Rule Law. Hence, the village cannot contend that section 504.01 may lawfully supersede the limitations established by the Village Law (Kamhi v Town of Yorktown, supra, at 434-435).
To sustain the use of the zoning laws in this case would obscure, if not obliterate, any predictable limit upon the power of a local government to coerce its citizens by withholding any of the multitude of permits which are needed to conduct ordinary business affairs.
The village is not without remedy. Given the denial of the Company’s motion for summary judgment, the village may pursue its pending contractual claim against the Company with such vigor as it deems appropriate.
*377 CONCLUSION
The petitioner is entitled to a judgment directing the village to issue the permit and declaring the provisions of section 504.01 ultra vires and void which require the satisfaction of extraneous debts as a condition precedent to the issuance of a building permit.