PETER MAZZARA, Appellant, v. TOWN OF PITTSFORD et al., Respondents, et al., Defendants.

PETER MAZZARA, Appellant-Respondent, v. TOWN OF PITTSFORD et al., Defendants, and YOUNG MEN'S CHRISTIAN ASSOCIATION OF ROCHESTER AND MONROE COUNTY, Respondent-Appellant.

Fourth Department, April 9, 1970.

*Donald Spadone* for Peter Mazzara.

*Harris, Beach & Wilcox* (*Robert C. Gebhardt* of counsel), for YMCA.

*Lines, McLouth, Wilkens & Osborn* (*Steven V. Lines* of counsel), for Town of Pittsford.

BASTOW, J. The primary issue presented on these appeals is the legality of an ordinance adopted by the defendant, Town Board, on July 13, 1965 which rezoned from "A" Residential to "B" Residential some six acres of land known as the Smith Farm which three weeks thereafter were purchased by defendant, Young Men's Christian Association of Rochester and Monroe County (YMCA) as the site for the erection of a building to be used for the recognized purposes and activities of the association. Subsidiary issues are presented as to the standing of plaintiff to question the validity of the enactment and whether or not he was guilty of laches in delaying the commencement of the action.

Following a lengthy trial the court decided that the ordinance was valid; that defendant lacked standing to attack the ordinance but that he had not "waived" his right to institute the action. Plaintiff in substance appeals from the first two parts of the decision. YMCA appeals from the indirect finding that plaintiff was not guilty of laches.

Consideration will be given first to the validity of the enactment. The subject property (Smith Farm) is located on Jefferson Road in the Town of Pittsford. It is bordered on the southwest by a subdivision (Graylocks) consisting of custom-built homes selling for $40,000 to $70,000. Plaintiff is a builder, who in 1963 purchased some 50 or more vacant lots in Plymouth Colony subdivision which adjoins the Smith Farm on the south and west. Through the years he has constructed homes on the lots and sold them in a price range of $30,000 to $40,000. At the time of trial he owned his residence in the subdivision and 25 or more vacant lots therein. An elementary school is located nearby and abuts Plymouth Colony subdivision on the west.

The zoning ordinance of the town classified residential districts into four groups. "AA" district is limited to one-family dwellings; "A1" district to the same and a church or school. "A" Residential (the classification of the Smith Farm prior to the zoning change) authorized any use in the two higher classifications and, among other uses, public libraries, golf clubs, farms, nurseries and a professional office maintained in a family dwelling for the sole professional use of one of the family. "B" Residential (the classification to which the farm was

changed by the ordinance of July 13, 1965) permitted any use in the three higher classifications and, among other uses, two-family dwellings, multiple dwellings, trailer camps, community centers, hospitals and sanitariums.

The trial court in substance held that the ordinance was valid because adopted in accordance with a comprehensive plan. We disagree. A " ' comprehensive plan ' requires that the rezoning should not conflict with the fundamental land use policies and development plans of the community." (*Udell* v. *Haas,* 21 N Y 2d 463, 472.) " In exercising their zoning powers, the local authorities must act for the benefit of the community as a whole following a calm and deliberate consideration of the alternatives, and not because of the whims of either an articulate minority or even majority of the community." (*Ibid.,* p. 469.)

The written decision of the Town Board makes it abundantly clear that the sole consideration of the board was to rezone the property for use by the YMCA and — apparently to avoid the charge of spot zoning — unceremoniously and haphazardly classified the property as " B " Residential.

It well may be that by an ordinance properly drawn and limited in scope the zoning of subject property for use by the YMCA would be legal and proper. But that is not the question before us. The rezoning as accomplished would permit the present or future use of the property for a variety of purposes, including multiple dwellings and trailer camps. " It is not enough to say that the owner's intention is to build a restaurant. We deal in actualities, not ifs. It is not the presently intended use but the many permitted uses authorized by the amendment for this vacant land that must be judged. There is nothing in the record giving assurance that the land will be used solely for a restaurant and motel." (*Walus* v. *Millington,* 49 Misc 2d 104, 109–110, affd. on this opinion *sub nom. Walus* v. *Gordon Realty Corp.,* 31 A D 2d 777.)

We emphasize the limited scope of our decision. The defendant town by statute (Town Law, § 263) is mandated to adopt zoning regulations " in accordance with a comprehensive plan." This direction is legislative recognition that piecemeal or haphazard zoning does not satisfy the need of promoting the general welfare. It has been written, however, that where " the Town Board acted in accordance with a comprehensive plan, even the singling out of one lot or the creation of a small area in the center of a large zone devoted to a different use will not be condemned as spot zoning." (*Thomas* v. *Town of Bedford,* 11 N Y 2d 428, 435.) Whether defendant town may fashion legislation that will meet this test is a question upon which we

express no opinion. The extent of our holding is that the rezoning was not " accomplished in a proper, careful and reasonable manner." (*Rodgers* v. *Village of Tarrytown*, 302 N. Y. 115, 122.)

We consider next the conclusion of the trial court that plaintiff lacked standing to attack the ordinance. The rule is recognized that to maintain an action such as this one a plaintiff " must demonstrate that he has suffered or will suffer pecuniary damage as a result of the regulation or decision complained of." (Anderson, Zoning Law and Practice in New York State, § 21.03.) It well may be that if the zoning amendment had been limited to a classification that would have embraced a use similar to that proposed by YMCA the proof is insufficient, as the trial court found, to establish that plaintiff had standing to bring the action. Inasmuch, however, as the ordinance does not restrict the use of subject property to such a purpose the evidence demonstrates that plaintiff would suffer such damage if the land should be used for a trailer camp or multiple dwelling. Thus, defendants' expert, Wills, admitted on cross-examination that a trailer camp would have a harmful effect on plaintiff's property.

Lastly, we consider the contention of YMCA that relief may not be granted plaintiff because of his laches. About a year passed between the enactment of the ordinance and the commencement of the action. During this period YMCA expended a considerable sum of money. The major part thereof, however, was disbursed some three weeks after passage of the ordinance when the association took title to the property and paid the purchase price. On the other hand plaintiff, who with his attorney had been a vigorous objector to the zoning change at the public hearing, testified that thereafter almost weekly he visited the office of the Town Building Inspector and inquired if building plans and specifications had been filed. None were so filed prior to the commencement of the action.

" Essentially, the defense of laches consists of an unreasonable delay by a plaintiff to the prejudice of the defendant [citing case]. But mere delay, however long, without the necessary elements to create an equitable estoppel, does not preclude the granting of equitable relief " (*Weiss* v. *Mayflower Doughnut Corp.*, 1 N Y 2d 310, 318). Two of the elements of such an estoppel are reliance and change of position by a defendant by the words or conduct of a plaintiff. (Cf. *Byrne* v. *Barrett*, 268 N. Y. 199, 208.) Manifestly, these essential elements are here lacking and there is no proof that YMCA was prejudiced by plaintiff's conduct or reliance thereon.

94

It may be gathered from the proof that upon the enactment of the ordinance YMCA promptly purchased the property and proceeded with its plans with apparent indifference as to what action plaintiff proposed to take. Complaint is made because plaintiff did not communicate with the association to ascertain what it was doing. The short answer is that if the association had communicated with plaintiff it could have ascertained his plans or perchance obtained facts upon which an estoppel might have been based.

The judgments entered August 13, 1969 and August 14, 1969, respectively, should be reversed and judgment entered (1) directing that (a) plaintiff has standing to attack the validity of the ordinance and (b) the ordinance enacted July 13, 1965 is invalid and (2) enjoining defendant town from (a) issuing a building permit to defendant YMCA or (b) taking any other action under the purported authority of the ordinance.

DEL VECCHIO, J. P., MARSH, GABRIELLI and HENRY, JJ., concur.

Judgments unanimously reversed on the law and facts with costs and judgment entered in favor of plaintiff in accordance with the opinion by BASTOW, J.