■ In the Matter of SHEILA C. STONE et al., Respondents, v EUGENE E. SCARPATO et al., Appellants, et al., Respondent. [728 NYS2d 61] —In a proceeding pursuant to CPLR article 78 to review a determination of the Board of Trustees of the Incorporated Village of Lynbrook, dated January 25, 1999, which rezoned the subject property from "Residence A" to "Commercial," the appeal is from so much of a judgment of the Supreme Court, Nassau County (DeMaro, J.), entered January 6, 2000, as granted the petition and annulled the determination.

Ordered that the judgment is reversed insofar as appealed from, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, the determination is confirmed, and the proceeding is dismissed on the merits.

The appellants Forest City Daly Housing, L. L. C., and Four Corners Development, Inc. (hereinafter collectively Daly), are respectively an operator and a builder of adult housing facilities, including assisted-living residences for senior citizens. In 1997 Daly was the contract vendee of an approximately two-acre parcel located on Ocean Avenue in the Village of Lynbrook. The parcel was zoned Residence A. In December 1997 Daly applied to the Village Board of Trustees (hereinafter the Board) for a special use permit to allow it to build a four- to five-story 125-unit assisted-living residence for senior citizens. Since adult home facilities were restricted to Commercial zone districts, Daly also requested that the Board rezone the site from Residence A to Commercial. In July 1997 the Village amended the zoning code, *inter alia*, to restrict adult home facilities to Commercial zone districts. A Draft Generic Environ-

mental Impact Statement (hereinafter DGEIS) was commissioned by the Village to assist it in evaluating the impact of the proposed zoning amendment. The DGEIS analyzed the entire area of the Village to identify all appropriate sites that, at the time, matched the criteria set forth in the proposed rezoning. There were 15 such sites—all of them located in Commercial zone districts—that were identified. The subject site was not included among those 15 sites. The DGEIS, however, further stated that adult home facilities would "have the potential to act as a buffer between the intense uses within a commercial district and the less intensive uses within a residential district."

The subject site consists of approximately two acres and is an assemblage of parcels. One portion is a parcel that contains an abandoned day camp. The other portion contains six single-family residences that would be demolished for the proposed senior citizen residence. The parcel has been continuously zoned Residence A since 1926, and the entire surrounding neighborhood is also zoned Residence A. The site is bounded on the west by Ocean Avenue, a heavily used, four-lane county road. On the south, the site is at the intersection of Ocean Avenue and Peninsula Boulevard, a four- to six-lane, heavily-used major county road. It is 50 feet from Peninsula Boulevard, separated from Peninsula by a narrow road and a narrow strip of undeveloped land. There are no houses on either side of Peninsula Boulevard by the site. To the east of the site is an 11.4-acre open-land preserve. To the north and on the same side of Ocean Avenue as the site are two single-family houses. North of the two houses are vacant land and recreational fields. Situated across Ocean Avenue are residential parcels with single-family houses, most of which face side streets rather than Ocean Avenue. Completing the description of the area, there is a pub located at the southwest corner of Ocean Avenue and Lawrence Avenue, across from this proposed site.

As noted, Daly proposed, *inter alia*, to demolish the six houses and the abandoned camp buildings and to construct a building, residential in design, that would occupy 48% of the site. The Village ordered a Supplement to the DGEIS (hereinafter SDGEIS) which was completed in February 1998. The SDGEIS concluded that there would be no significant environmental impact from the construction of an adult assisted-living facility on the site. In addition, the SDGEIS determined that the development of the site for single-family houses was not feasible and that the Daly proposal would provide a greater benefit to the Village than single-family home development,

and that the surrounding neighborhood property would benefit as well. The Board concluded that the proposed senior citizen housing project would generate an estimated tax revenue of $360,000 per year.

After a series of hearings and consideration of letters of concern or objection, on January 25, 1999, the Board unanimously approved the zoning change and Special Use Permit, imposing numerous conditions including that the commercial use be limited to use as an adult home.

The petitioners, residents and owners of real property located within close proximity to the site, brought this proceeding, *inter alia*, to review the determination of the Board, contending that the Board's action in granting the zoning classification of the site from "residential" to "commercial" was not in accord with the Village's "Master Plan" and constituted "spot zoning." The Supreme Court annulled the rezoning. We reverse.

A village must exercise its zoning power in accordance with a "comprehensive plan" (*see,* Village Law § 7-704). A comprehensive plan need not be contained in a single document. Rather, all available and relevant evidence of the municipality's land use policies need be examined to determine whether a municipality has a comprehensive plan (*see, Udell v Haas,* 21 NY2d 463). "Zoning legislation is tested not by whether it defines a [comprehensive] plan but by whether it accords with a [comprehensive] plan for the development of the community. When a zoning ordinance is amended, the court decides whether it accords with a [comprehensive] plan in much the same way, by determining whether the original plan required amendment because of the community's change and growth and whether the amendment is calculated to benefit the community as a whole as opposed to benefiting individuals or a group of individuals" (*Asian Ams. for Equality v Koch,* 72 NY2d 121, 131).

The Board reasonably found that the zoning change was in the public interest of all the residents of the Village of Lynbrook and was not, therefore, impermissible spot zoning (*see, Asian Ams. for Equality v Koch, supra,* at 131). Goldstein, J. P., McGinity, Schmidt and Smith, JJ., concur.