[870 NYS2d 422]

BLF Associates, LLC, Respondent, v Town of Hempstead et al., Appellants.

Second Department, December 23, 2008

### APPEARANCES OF COUNSEL

*Jaspan Schlesinger Hoffman, LLP*, Garden City (*Laurel R. Kretzing, Lisa A. Cairo* and *Seth A. Presser* of counsel), for appellants.

*Rosenberg Calica & Birney LLP*, Garden City (*Ronald J. Rosenberg* and *Lesley A. Reardon* of counsel), for respondent.

### OPINION OF THE COURT

LIFSON, J.

This appeal involves the zoning of a 17-acre parcel of property (hereinafter the property) located in North Bellmore, in the Town of Hempstead. The property was previously owned by the United States of America and used as an Army Reserve facility by the Department of Defense. The property and the surrounding area was zoned as a "B Residence" district, which permits single-family detached housing or senior residences on 6,000-square-foot lots with a minimum lot frontage of 55 feet. The B Residence zone also allows school, religious, "municipal recreational," and agricultural uses. In 1996 the United States of America closed the Army Reserve facility and the property was made available for transfer, pursuant to the Federal Base Closure and Realignment Act of 1990. In accordance with that Act, the Town was afforded the first opportunity to acquire the property and redevelop it for a public purpose. In furtherance of its interest in acquiring the property, the Town formed the North Bellmore Base Reuse Planning Group as the Local Redevelopment Agency (hereinafter the LRA) to develop a usage plan for the property.

After a series of public meetings the LRA issued its Reuse Plan and Technical Report (hereinafter the Reuse Plan) in April 1997. The Reuse Plan contemplated a specific mixed-use development limited to 34 single-family homes with a price cap, 40 senior citizen semi-attached dwellings with a price cap, and a community recreational facility. The Town intended that the plan be incorporated as a deed restriction in the land sale documents promulgated by the United States Department of the Army (hereinafter the Department of the Army).

Ultimately, the Town chose not to purchase the property, and in 2004 the Department of the Army offered the property for sale through a competitive bidding process. The "Notice of Availability" for the sale of the property provided, inter alia, that the Town had a redevelopment plan for the property which included a mix of single-family and senior dwellings and a community recreational facility. In December 2004 the petitioner herein, BLF Associates, LLC (hereinafter BLF), which had been declared the successful bidder for the property, entered into an exchange agreement to purchase the property for the sum of $6,650,000 from the Department of the Army. The exchange agreement made no reference to the Reuse Plan.

In the meantime, the Town proposed enacting article XXX-VIII of the Town's Building Zone Ordinance to implement the Reuse Plan for the property. On November 16, 2004, a public hearing was held on the resolution, and a representative of BLF appeared in opposition to its enactment. On April 19, 2005, the Town passed a resolution approving the enactment of article XXXVIII, which created the "North Bellmore Planned Residence District." Article XXXVIII provides, inter alia, that the property "may be used for any of the following purposes, and for no other:" no more than 34 single-family homes, no more than 40 senior citizen semi-attached dwellings, and a community recreational facility. The community recreational facility was required to be a 9,000-square-foot center on no fewer than 1.25 acres of land, with a swimming pool, a picnic area, a minimum of two tennis courts, an exercise room, no fewer than two shuffleboard courts, a kitchen, an office, and a community room/lounge. Article XXXVIII also required the transfer of the 1.25-acre recreational facility to a homeowners' association. Additionally, article XXXVIII sets various standards for matters such as the size and placement of yards, minimum lot area and width, and the height and area of buildings, and provides that no permits would be issued unless a site plan was first submitted to the LRA for review and recommendation, and then to the Town for approval.

On November 30, 2005, title to the property was transferred from the United States of America to BLF. Thereafter BLF commenced this action seeking a declaratory judgment that the Town's enactment of article XXXVIII was ultra vires, void, and unconstitutional; a preliminary and permanent injunction enjoining the Town from imposing the Reuse Plan upon BLF; and compensatory and punitive damages. BLF moved for sum-

mary judgment on the complaint and the defendants cross-moved for summary judgment, and in an order entered May 21, 2007, the Supreme Court denied the defendants' cross motion and granted BLF''s motion on the ground that the Town's enactment of article XXXVIII was ultra vires and, therefore, void as a matter of law (16 Misc 3d 1104[A], 2007 NY Slip Op 51260[U]). We affirm.

"Towns and other municipal authorities have no inherent power to enact or enforce zoning or land use regulations. They exercise such authority solely by legislative grant and in the absence of legislative delegation of power[,] their actions are *ultra vires* and void" (*Matter of Kamhi v Planning Bd. of Town of Yorktown*, 59 NY2d 385, 389 [1983]; *see Matter of Bayswater Realty & Capital Corp. v Planning Bd. of Town of Lewisboro*, 149 AD2d 49, 52 [1989]). The enabling statutes applicable here are Town Law §§ 261-263. Section 261 confers upon the Town the broad authority to enact ordinances which

> "[f]or the purpose of promoting the health, safety, morals or the general welfare of the community . . . regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of the lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land."

Section 262 states that the Town may create "districts of such number, shape and area as may be deemed best suited to carry out the purposes of this [enabling] act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land." Section 263 mandates that such zoning regulations enacted in accordance with the preceding statutes be "made in accordance with a comprehensive plan."

A comprehensive plan is a compilation of land use policies that may be found in any number of ordinances, resolutions, and policy statements of the town (*see Osiecki v Town of Huntington*, 170 AD2d 490 [1991]). "Zoning legislation is tested not by whether it *defines* a well-considered plan, but by whether it *accords* with a well-considered plan for the community" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 684-685 [1996]; *see Asian Ams. for Equality v Koch*, 72 NY2d 121, 131 [1988]; *Matter of Stone v Scarpato*, 285 AD2d 467, 469 [2001]). The requirement that zoning decisions be made in ac-

cordance with a comprehensive plan for the community "operate[s] to impose mutual benefits and restrictions on the parties within the community" (*Matter of Village of Chestnut Ridge v Town of Ramapo*, 45 AD3d 74, 87 [2007]).

The statement of legislative purpose in article XXXVIII acknowledges that it was enacted in order to implement the Reuse Plan for the property. The rezoning of property for implementation of a specific project which the Town had intended to construct if it acquired the property is not a consideration or purpose embodied in the enabling act (*see Mazzara v Town of Pittsford*, 34 AD2d 90, 92 [1970]). Furthermore, while Town Law §§ 261 and 262 empower the Town to regulate and restrict lot sizes and permitted uses, there is nothing in these sections which empowers the Town to create a zoning ordinance that specifies the exact number and type of dwellings allowed. Nor do the applicable enabling statutes purport to allow the enactment of a zoning ordinance that requires construction of a 9,000-square-foot community recreational facility, with specified amenities, on no fewer than 1.25 acres of land. Zoning ordinances may go no further than determining what may or may not be built, and that article XXXVIII is unnecessarily and excessively restrictive leads us to conclude that it was not enacted for legitimate zoning purposes (*see Vernon Park Realty, Inc. v City of Mount Vernon*, 307 NY 493 [1954]; *Blitz v Town of New Castle*, 94 AD2d 92, 99 [1983]). Moreover, and contrary to the Town's contention, the provisions of article XXXVIII that require the recreational facility to be owned by a homeowners' association and that the senior citizen dwellings be cooperative units are clearly ultra vires and void. It is a "fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it" (*Matter of Dexter v Town Bd. of Town of Gates*, 36 NY2d 102, 105 [1975]; *see FGL & L Prop. Corp. v City of Rye*, 66 NY2d 111, 116 [1985]).

While article XXXVIII may define a well-considered plan in creating the "North Bellmore Planned Residence District," the district and its specific form of mixed-usage development is inconsistent with the surrounding area of the Town, which is zoned B Residence. The Town itself, in its Reuse Plan, acknowledged that the property was "surrounded by a totally developed, single-family neighborhood," that the property was "surrounded by a densely populated single-family residential neighborhood," and that "the characteristic land use of the entire surrounding area" was B Residence.

Finally, regarding the Town's contention that BLF cannot be heard to complain because it knew about the Reuse Plan and article XXXVIII before it closed title, the "[p]urchase of property with knowledge of [a] restriction does not bar the purchaser from testing the validity of the zoning ordinance [because] the zoning ordinance in the very nature of things has reference to land rather than to owner" (*Vernon Park Realty, Inc. v City of Mount Vernon*, 307 NY at 500).

Accordingly, the Supreme Court properly denied the defendants' cross motion and granted BLF's motion for summary judgment on the ground that enactment of article XXXVIII was ultra vires. Having determined that article XXXVIII is invalid on such grounds, it is unnecessary to reach the constitutional issues raised by BLF (*see FGL & L Prop. Corp. v City of Rye*, 66 NY2d 111 [1985]). Therefore, the order is affirmed, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that article XXXVIII of the Building Zone Ordinance of the Town of Hempstead is ultra vires (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

MASTRO, J.P., SKELOS and LEVENTHAL, JJ., concur.

Ordered that the order is affirmed, with costs, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that article XXXVIII of the Building Zone Ordinance of the Town of Hempstead is ultra vires.